MODIFIED OPINION ON MOTION FOR REHEARING
ROBERTS, J.,
for the Court:
¶ 1. The motion for rehearing is granted, and the previous opinion of this Court is withdrawn with this opinion substituted in lieu thereof. We reverse and remand.
¶ 2. Keith Spearman appeals his conviction of attempted burglary of a building and sentence of five years in the custody of the Mississippi Department of Corrections (MDOC), with two years to serve and three years suspended. He argues that: (1) he was denied his constitutional right to testify, and (2) his indictment was fatally defective because it failed to charge an essential element of the crime charged.
FACTS
¶3. On June 5, 2007, Officer Charles White of the Cleveland Police Department was on patrol in Cleveland, Mississippi, when he heard a sound he described as the tin roof coming off of a building. Then, he heard an alarm sound from the back of the Pickled Okra restaurant. He walked to the back of the building and saw Spearman attempting to cut the lock off of a walk-in cooler with bolt cutters. Spearman threw the bolt cutters over a fence and then crossed the fence and began walking away. Officer White arrested Spearman.
¶ 4. Spearman was charged with the attempted burglary of a building. He proceeded to trial, and the jury found him guilty of the crime charged. Spearman was sentenced to five years in the custody of the MDOC, with two years to serve and three years suspended. His motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial was denied by the circuit court.
ANALYSIS

1. Whether Spearman was denied his constitutional right to testify.

¶ 5. Spearman argues that he was denied his constitutional right to testify because the record clearly indicates that Spearman wished to testify, yet the defense rested its case without any testimony from Spearman. The State responds that this claim arises from an error in the transcript as indicated by a review of the record as a whole.
¶ 6. On order of this Court, pursuant to the Court’s authority under Rule 10(e) of the Mississippi Rules of Appellate Procedure, the case was remanded to the trial court for an evidentiary hearing to determine whether the record accurately re- *32 fleeted Spearman’s decision to testify. No witness testified that the record was incorrect. To the contrary, each witness testified that the record was correct. Because of the ambiguous record, this Court is compelled to reverse and remand for a new trial.
¶ 7. At trial, after the State rested its case, the following exchange occurred between the circuit judge; Spearman’s attorney, Boyd P. Atkinson; and Spearman:
MR. ATKINSON: If I may have just a few minutes to talk with my client and determine whether or not he’s going to take the witness stand, your Hon- or?
THE COURT: Sure.
(Court recessed: 10:47 a.m.)
(Court convened: 10:50 a.m.)
THE COURT: Let’s get back on the record. Mr. Spearman, come here a minute.
MR. ATKINSON: Your Honor, I have been advised by my client that he does not wish to take the witness stand, and so I need for the Court to have a—
THE COURT: Mr. Spearman, do you understand you have a right to get on this witness stand and testify?
THE DEFENDANT: Yes, sir.
THE COURT: I’m sorry?
THE DEFENDANT: Yes, sir.
THE COURT: Okay. And your lawyer may have explained this to you, but I want to, make sure that you understand independently that that right is yours and yours alone?
THE DEFENDANT: Yes, sir.
THE COURT: Your lawyer can advise you, but you will be the one to make your ultimate decision. Do you understand?
THE DEFENDANT: Yes, sir.
THE COURT: And your lawyer has indicated y’all have discussed this matter. Have you made a decision?
THE DEFENDANT: I’ll take the stand. I don’t mind.
THE COURT: Well, it’s up to you. Do you want to take the stand or do you not want to take the stand?
THE DEFENDANT: Yes, sir, I’ll take it.
THE COURT: Which one?
THE DEFENDANT: I’ll take the stand.
MR. ATKINSON: Okay. Well, I need a few more minutes with him.
(Court recessed: 10:51 a.m.)
(Court convened: 10:57 a.m.)
MR. ATKINSON: Mr. Spearman now goes back to his original position advising me he does not wish to take the witness stand. Now, your Honor, Mr. Spearman has kept asking me repeatedly what did I want him to do. And I tried to impress on him that is not a decision that I make. If I told him to take the witness stand and he didn’t want to take it, he doesn’t have to take it. And if he wanted to take the witness stand and I told him not to take it, he could still take it. It is not my decision to make.
THE COURT: Mr. Spearman, this a question I have to ask everybody that is on trial and doesn’t take the stand. And their decision, you know, before they do is the same question I ask— you know, I’ve asked hundreds of people before. And really the point of it, I think, is to make sure you have the right and are the one that ultimately made the decision. Now, you should listen to your attorney[,] but he’s not the final say-so. You are.
THE DEFENDANT: Yes, but you know, Mr. — every time I talk to him *33 about how we going to get this situation resolved, you know, we get on the same page of like zero talk, [sic]
THE COURT: Well, that may be true and I’m sure it’s the same situation a lot of lawyers and clients have had. But the point of this discussion at present is whether or not you are going to testify. What are you going to do?
THE DEFENDANT: I’m going to testify.
THE COURT: And you understand that’s your decision?
THE DEFENDANT: Yes, sir.
THE COURT: Well, let’s take our seats, and bring the jury out. Oh, wait a minute. Wait a minute. Let’s don’t bring the jury out. You go ahead and take a seat.
(Defendant seated at defense table.)
THE COURT: Let’s see, do /all have any instructions? Let’s do the instructions. It’s now 11:00. I think we ought to wait till — do you think we ought to wait till — let the jury go; bring them back at 1:00 and do the closing then?
THE PROSECUTOR: If we don’t, your honor, we’re going to mess around and either have a hung[ry] jury and we’ll have to feed them.
THE COURT: And we — right, that’s extra.
MR. ATKINSON: And that’s a logistical move.
THE COURT: Is that ok with you?
THE PROSECUTOR: Huh?
THE COURT: We’ll let the jury go; tell them to be back at 1:00 and do closing argument then?
THE PROSECUTOR: That’s fine.
MR. ATKINSON: We’re just trying to avoid having to feed them, or have hungry jurors.
THE COURT: We have the leisure to do it. We’ve got an hour. That’s what we are going to do.
Let’s see, first, let’s bring the jury back out. I’m going to ask you to put your case in chief on, for the record. Then, I’m going to ask you if you have any — no, you won’t have any rebuttal, because he didn’t put a case in chief on.
THE PROSECUTOR: Right.
MR. ATKINSON: Then, you are going to dismiss them until 1:00?
THE COURT: Yes, sir.
(Jury seated: 10:59 a.m.)
THE COURT: Alright. Let’s get back on the record. Mr. Atkinson, if you would call your first witness.
MR. ATKINSON: The defense rests at this time, your honor.
THE COURT: Defense rests.
¶ 8. Nothing else was said about Spear-man’s wish to take the stand. The jury was dismissed for lunch, while the court reviewed the jury instructions. When the jury returned from lunch, the jury instructions were given, and the jury began its deliberations. Ten minutes later, the jury returned a guilty verdict.
¶ 9. In Culberson v. State, 412 So.2d 1184, 1186-87 (Miss.1982), the supreme court instructed the trial courts of this state to make a record of a defendant’s waiver of his right to testify. The supreme court stated that:
We suggest to the trial judges of the state that, in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify. If the defendant states he does not wish to testify, he may not be forced to take the stand; *34 however, if he states that he wants to testify he should be permitted to do so. A record should be made of this so that no question about defendant’s waiver of his right to testify should ever arise in the future.

Id.

¶ 10. For the first time on appeal, Spearman argues that the record shows he unequivocally stated his desire to exercise his right to testify. After Spearman’s attorney announced that Spearman did not wish to testify, the circuit judge followed the instructions set out in Culberson and questioned Spearman about this decision. First, Spearman responded: “I’ll take the stand. I don’t mind.” He then conferred with his attorney again. Spearman was questioned by the circuit judge a second time. The record indicates that Spearman stated: “I’m going to testify.” The dissent states that Fannings v. State, 997 So.2d 953 (Miss.Ct.App.2008) is “relevant to the case at hand.” The record in Fannings indicated that the trial judge in that case performed his obligations pursuant to Culberson and James Arthur Fanning Jr. then stated: “[Ijt’s my understanding, Your Honor, that the case is based on the facts and evidence and the law, so I do not wish to testify.” Fannings, 997 So.2d at 964 (¶ 35). The trial court in Fannings honored that request, and Fanning did not testify. Id. The events in the case presently before us are the exact opposite of the events in Fannings. The last words from Spearman’s lips were, “I’m going to testify,” yet he did not.
¶ 11. It is clear from the record that the circuit judge was trying to get a definitive answer as to whether Spearman wished to testify. When Spearman’s attorney initially announced that Spearman would not testify and Spearman stated that he would testify, the circuit judge allowed Spearman to confer with his attorney to reconcile the different answers. Spearman’s attorney again stated that Spearman would not testify.
¶ 12. The circuit judge did not question Spearman further in order to ascertain whether Spearman was certain he wanted to testify against his attorney’s advice. Instead, the trial proceeded as if Spear-man had stated that he would not testify. The circuit judge immediately began to talk about the jury instructions. The circuit judge stated the following:
Let’s see, first, let’s bring the jury back out. I’m going to ask you to put your case in chief on, for the record. Then, I’m going to ask you if you have any— no you won’t have any rebuttal, because he didn’t put a case in chief on.
(Emphasis added). The attorney for the State agreed that she would have no rebuttal because the defendant did not plan on presenting a case-in-chief. The jury returned to the courtroom, and the defense rested — with no protest from either the circuit judge, Spearman’s attorney, or Spearman himself who had been quite vocal throughout the proceedings.
¶ 13. While the actions of the circuit judge and Spearman’s attorney are inconsistent with an assertion of Spear-man’s right to testify, we are unable to conclude from the record and from the hearing that Spearman’s constitutional right to testify was adequately protected. To do so, this Court would have to indulge in presumption or speculation. As the United States Supreme Court' noted a court should “indulge every reasonable presumption against waiver of a fundamental constitutional right.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
¶ 14. A defendant’s right to testify in his or her own defense is a fundamental constitutional right. Rock v. Arkansas, *35 483 U.S. 44, 51-53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The Mississippi Supreme Court has concluded likewise. Dizon v. State, 749 So.2d 996, 999 (¶ 12) (Miss.1999). To presume that Spearman waived his right to testify by his failure to speak up when his attorney announced, “Defense rests,” without calling him as a witness is indulging in a presumption of waiver; the very thing condemned by the United States Supreme Court in Johnson. The presumption must be against waiver.
¶ 15. Therefore, we reverse and remand this case for a new trial.[1]

2. Whether Spearman’s indictment was fatally defective because it failed to list an essential element of the crime charged.

¶ 16. Spearman claims that his indictment was fatally defective because it failed to list an essential element of attempt; specifically, he failed to consummate the commission of the crime attempted. Whether or not an indictment is defective is a question of law reviewed de novo. Gilmer v. State, 955 So.2d 829, 836 (¶ 24) (Miss.2007) (citation omitted).
¶ 17. Spearman was indicted under Mississippi’s general attempt statute, which states:
Every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no provision is made by law for the punishment of such offense, be punished as follows: If the offense attempted to be committed be capital, such offense shall be punished by imprisonment in the penitentiary not exceeding ten years; if the offense attempted be punishable by imprisonment in the penitentiary, or by fine and imprisonment in the county jail, then the attempt to commit such offense shall be punished for a period or for an amount not greater than is prescribed for the actual commission of the offense so attempted.
Miss.Code Ann. § 97-1-7 (Rev.2006). The three elements of the crime of attempt are: “(1) an attempt to commit a particular crime, (2) a direct ineffectual act done toward its commission and (3) the failure to consummate its commission.” McGowan v. State, 541 So.2d 1027, 1030 (Miss.1989) (interpreting Miss.Code Ann. § 97-1-7).
¶ 18. Spearman correctly states that his indictment failed to include language regarding the third element of attempt— Spearman’s failure to consummate the crime of burglary of a building. The indictment reads, in pertinent part, as follows:
KEITH SPEARMAN,
late of the County and Judicial district aforesaid, on or about June 5, 2007, in the County, Judicial District and State aforesaid, and within the jurisdiction of .this Court, did unlawfully, wilfully, felo-niously and burglariously attempt to break and enter a certain building, commonly known as, called and being [Pjick-led [Ojkra, located at 301 South Sharpe Avenue in Cleveland, Mississippi, there situated of the property of Cleveland Restaurant Group, Inc., in which building there were then and there goods, merchandise, equipment or valuable things kept for use or sale, with the intent to steal therein, or to commit any felony an[d]/or the crime of larceny *36 therein, by cutting the lock of the Pickled Okra walk-in cooler,....
Spearman claims that this failure to include the third element of attempt renders his indictment fatally defective.
¶ 19. However, this Court has held that the failui’e to charge the third element of attempt does not make an indictment defective. Hawkins v. State, 11 So.3d 123, 126-27 (¶ 10) (Miss.Ct.App.2008). Daryl Hawkins’s indictment did not charge the third element of attempt, and Hawkins made the exact assignment of error that Spearman now asserts. Id. This Court held that: “It is the law of this [s]tate that ‘the intent to commit a crime plus any slight act toward its consummation is sufficient in law to constitute the commission of an attempted crime.’ ” Id. (quoting Ford v. State, 218 So.2d 731, 732 (Miss.1969)). Thus, we found no error in Hawkins’s indictment and affirmed his conviction and sentence. Id.
¶ 20. In Neal v. State, 936 So.2d 463, 467 (¶ 13) (Miss.Ct.App.2006), we discussed the notice that a defendant must receive in an indictment for attempt, stating:
An attempt has this required proof: “(1) an attempt to commit a particular crime, (2) a direct ineffectual act done toward its commission and (3) the failure to consummate its commission.” McGowan v. State, 541 So.2d 1027, 1030 (Miss. 1989) (interpreting Miss.Code Ann. § 97-1-7 (1972), which provides that an attempt occurs when a person “shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein.... ”)[.] Though those three elements must be proved, the [sjupreme [c]ourt earlier had held that two elements need to be charged: “(1) the intent to commit the offense, and (2) an overt act toward its commission.” Maxie v. State, 330 So.2d 277, 277 (Miss.1976) [ (citing Ford, 218 So.2d at 732) ]. The two opinions, Maxie and McGowan, can he viewed as consistent in that using the word “attempt” puts a defendant on notice that the State will prove that the crime was not completed. However, there would be notice neither of the specific crime nor of the overt act of the attempt unless the charging document describes those elements.
(Emphasis added).
¶ 21. Here, the specific crime of burglary of a building is listed in the indictment. The overt act — cutting the lock off of the Pickled Okra walk-in cooler — is also listed in the indictment. The use of the word “attempt” gave Spearman sufficient notice that the State would prove that the crime was not successfully committed. Accordingly, we find this issue has no merit.
¶ 22. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, J., AND JOINED IN PART BY MAXWELL, J.

. The dissent discusses "any claim of ineffective assistance of counsel that Spearman may assert." With utmost respect for the dissent, Spearman did not raise an issue alleging ineffective assistance of counsel. Furthermore, this opinion does not address such an issue.