FAIR, J.,
for the Court:
¶ 1. In 2008, this Court affirmed Dennis Howard’s conviction of armed robbery. See Howard v. State, 2 So.3d 669 (Miss.Ct.App.2008), cert. denied, 999 So.2d 1280 (Miss.2009). Howard subsequently requested and received permission from the Mississippi Supreme Court to file a post-conviction relief (PCR) motion on the question of whether his trial counsel had prevented him from testifying in his own defense.
¶ 2. At the evidentiary hearing, Howard testified that he had told his trial attorney he wanted to testify, but the attorney just ignored him and rested the case without calling Howard to the stand. Howard claimed he was ignorant of the. trial process and did not realize anything was amiss until it was too late. The circuit court found that Howard’s story was not credible. It denied Howard’s PCR motion, and he appeals.
STANDARD OF REVIEW
¶ 3. When reviewing the denial of a PCR motion, an appellate court “will not disturb the trial court’s factual findings unless they are found to be clearly erroneous.” Callins v. State, 975 So.2d 219, 222 (¶ 8) (Miss.2008).
DISCUSSION
¶4. The supreme court granted Howard permission for an evidentiary hearing based on his claims that he “was not permitted to testify on his own behalf’ and “that his trial counsel prevented him from doing so.” After the evidentiary hearing, the trial court found these allegations baseless. Howard enumerates five issues relating to procedural aspects of the hearing, which we have reorganized and consolidated into four issues for our analysis. We also address the dissent’s concerns relating to the underlying merits of How *568 ard’s claim, although we find that issue procedurally barred because Howard does not argue it in his brief on appeal. We find no error and affirm.
1. Sua Sponte Subpoenas
¶ 5. Howard admits he did not subpoena his trial attorney to testify at the evidentiary hearing. He argues that the trial court should have subpoenaed the attorney for him on its own initiative, since the attorney would have been the only person able to confirm or deny Howard’s most important claims, specifically that the attorney never asked Howard whether he wanted to testify at his trial.
¶ 6. Howard cites no authority placing the responsibility for securing his witnesses on the trial court, nor are we aware of any. Instead, Howard had to call his own witnesses and prove his own case; “the burden of proof is on the petitioner to show by a preponderance of the evidence that he is entitled to relief.” Roach v. State, 116 So.3d 126, 131 (¶ 15) (Miss.2013) (citations and internal quotation marks omitted); see also Miss.Code Ann. § 99-39-23(7) (Supp.2014). Howard was entitled to subpoena witnesses, or he could have offered “proof by affidavits, depositions, oral testimony or other evidence.” § 99—39—23(3)—(4).
¶ 7. Howard also should have, at the very least, made some effort to secure a statement from the attorney and presented it (or an explanation why he could not do so) with a motion for a new trial following the evidentiary hearing. See King v. State, 251 Miss. 161, 171-72, 168 So.2d 637, 641 (1964).
¶ 8. It is true that Howard was pro se, but “[w]hile pro se litigants are afforded some leniency, they must be held to substantially the same standards of litigation conduct as members of the bar.” Hardison v. State, 94 So.3d 1092, 1106 (¶ 48) (Miss.2012) (citation and internal quotation marks omitted). We find no merit to this issue.
2. Scope of the Hearing
¶ 9. The Mississippi Supreme Court granted Howard leave to file his proposed PCR motion in the trial court. The supreme court’s order specifically limited Howard’s permission to file a PCR motion to those “claims raised in his application [to the supreme court] and [proposed] motion.” After Howard filed the motion, as proposed, he sought to amend it to include additional claims for relief— including challenges to jury instructions, the amendment of his indictment, ineffective assistance of counsel, and others. The trial court refused to allow these amendments and limited the evidentiary hearing to the claims made in the motion approved by the supreme court.
¶ 10. Howard was convicted after a trial, and his conviction was affirmed by this Court on appeal. “When a case is affirmed on direct appeal, permission from the Mississippi Supreme Court must be obtained in order to seek post-conviction relief in the circuit court.” Campbell v. State, 75 So.3d 1160, 1161-62 (¶ 7) (Miss. Ct.App.2011) (citing Miss.Code Ann. § 99-39-7 (Supp.2013)).
¶ 11. Howard contends that these issues are not subject to procedural bars because they implicate fundamental constitutional rights. Even if that were the case, the absence of leave from the supreme court is not a mere procedural bar; it is jurisdictional. Id. at 1162 (¶ 7). The trial court correctly found that it had no authority to go beyond the supreme court’s order and consider Howard’s additional issues. This issue is without merit.
*569 3. Motions “to be Moved,” for Appointment of Counsel, and for Continuance
¶ 12. Howard filed a motion “to be moved” to the Attala County Jail from the Mississippi State Penitentiary, where he was under “lockdown” for disciplinary infractions. According to Howard, his phone and visitation privileges had been revoked, and this impeded his ability to prepare for the PCR hearing. But Howard does not specify anyone he was unable to contact or what he wanted to investigate. Instead, he seems to admit that the only other relevant witness would have been his attorney, whom Howard apparently did not pursue (supposedly under the mistaken belief that the trial judge would secure his appearance). Moreover, this claim does not appear to have been properly before the circuit court because there is no indication Howard had exhausted his administrative remedies with the Mississippi Department of Corrections. See Miss.Code Ann. § 47-5-803 (Rev.2011). Howard has not shown that he could not prepare for the hearing from prison. We find no error in denying this motion.
¶ 13. Howard also requested appointed counsel. He acknowledges that there is no state or federal constitutional right to appointed counsel in post-conviction proceedings. Moore v. State, 587 So.2d 1193, 1195 (Miss.1991). Nonetheless, the trial court may appoint counsel to an indigent petitioner when an evidentiary hearing is required, but it is in the trial judge’s discretion. Id. at 1195-96.
¶ 14. Howard might have benefitted from the presence of an attorney, but his claim was not particularly novel or complicated, nor did it require extensive investigation. Howard has failed to show the trial judge abused his discretion in denying the motion for appointed counsel.
¶ 15. Finally, Howard contends the trial court erred in denying his motion for a continuance. At the beginning of the hearing, Howard stated that he was ready to proceed. After some argument and testimony, however, Howard asked the circuit court for a continuance to secure counsel. The court denied the request. On appeal, Howard contends that this was error. He faults the circuit court for waiting too long to deny his motion for appointment of counsel, and he complains of his difficulty investigating his case because of his discipline-related restrictions in prison.
¶ 16. “The denial of a last minute request for a continuance to retain new counsel is within the trial court’s discretion.” Atterberry v. State, 667 So.2d 622, 629 (Miss.1995). It will not be reversed on appeal unless the denial resulted in a “manifest injustice.” Stack v. State, 860 So.2d 687, 691 (¶ 7) (Miss.2003). Moreover, the burden of showing a manifest injustice cannot be satisfied by eonclusory arguments, but instead must be shown by “concrete facts” that “demonstrate ... particular prejudice.” Id. at 691-92 (¶ 7).
¶ 17. Howard has been seeking post-conviction relief for years. His PCR petition was filed with the circuit court more than four months before the hearing, and Howard had about ten days’ notice before the hearing that the trial court had denied his request for a court-appointed attorney. After all that, Howard waited until the middle of the hearing to request a continuance. He has not shown any particular prejudice, much less a manifest injustice. We find no abuse of discretion.
4. Right to Appeal
¶ 18. Howard next contends that the trial court erred in not informing him he had a right to appeal its denial of his motion for post-conviction relief. Since *570 Howard did appeal that judgment, anyway, this issue is moot.
5. The Underlying Merits
¶ 19. Although Howard obviously does not agree with the circuit court’s decision on the merits of his claim, he does not identify this as a separate issue or attack the merits directly in his brief on appeal. We are mindful that the Mississippi Supreme Court has “held that where a prisoner is proceeding pro se, we will take that into account and, in our discretion, credit not so well pleaded allegations so that a prisoner’s meritorious complaint may not be lost because inartfully drafted.” Corrothers v. State, 148 So.3d 278, 314 (¶ 94) (Miss.2014). But the issue here is substance, not drafting. Howard has not raised this issue, and thus it is waived.
¶ 20. And even if there was no waiver, the circuit court was acting well within its discretion when it denied Howard’s PCR motion on its merits. Howard’s claim is that he intended to testify in his own defense, but his attorney prevented him from doing so. This allegation was supported only by Howard’s own testimony, and the trial judge found that Howard was not credible. This was within the court’s discretion as the finder of fact. See, e.g., City of Jackson v. Lipsey, 834 So.2d 687, 691 (¶ 14) (Miss.2003). Since Howard bore the burden of proof, but presented no credible evidence, his claim was properly denied on the merits.
¶ 21. The dissent acknowledges that the circuit court, as the finder of fact, was entitled to reject Howard’s testimony entirely. Yet it would reverse his conviction anyway, finding that there must be “affirmative proof’ Howard had waived his right to testify.
¶ 22. With respect to the dissent, there is affirmative proof in the record — Howard’s attorney rested the case without calling Howard to testify. This occurred immediately after the trial judge explained to Howard, at length, that only he had the right to decide whether he would testify. The judge then allowed Howard and his attorney a private conference, after which Howard’s attorney rested the case. The inference, which surely the trial court must be allowed to make, is that counsel was acting competently and faithfully. It is axiomatic that it must be presumed that counsel is competent and that his actions fall within the broad range of reasonable professional assistance. See, e.g., Sea v. State, 49 So.3d 614, 628 (¶ 40) (Miss.2010).
¶ 23. While we would concede that Howard’s silence should not amount to an absolute waiver of his claim, the fact that Howard first made these allegations years after the trial was properly considered in deciding whether they were credible. The judge advised Howard of his right to testify, at great length and on the record:
Q. You are Dennis Darnell Howard, the defendant in this case today, and, Mr. Howard, I want to advise you that under the Constitution — you can put your hand down now — under the Constitution of the United States and of the State of Mississippi, you’ve got a constitutional right to testify as a witness on your own behalf if you chose to do so. Do you understand that?
A. Yes, sir.
Q. Do you understand also that you’ve got the constitutional right to not testify if you choose not to testify?
A. Yes, sir.
Q. And do you understand that the decision as to whether to testify or not to testify is your decision and yours alone?
A. Yes, sir.
Q. Do you understand if your lawyer wanted you to testify and you didn’t *571 want to, your lawyer could not force you to testify?
A. Yes, sir.
Q. Do you understand further that if you chose — wanted to testify and he thought you shouldn’t testify, you could override his decision and you could testify even if he thought it was best for you not to. Do you understand that?
A. Yes, sir.
Q. So, in all aspects, the defense is totally controlled by you. Your lawyer can offer you advice, but, in the end, you make the decision to testify or not to testify. You also make the decision as to whether to call witnesses or not on your own behalf. Do you understand that?
A. Yes, sir.
The court then granted a short recess for Howard and his counsel to discuss whether Howard would testify, and immediately thereafter Howard’s counsel rested. Howard sat silently through this — and the rest of the trial, including not one but two questions from the jury that were related to his decision not to testify.[1] Howard did not complain in his. motion for a new trial, nor in his direct appeal of his conviction, nor in his first attempts at obtaining permission from the supreme court to seek post-conviction relief. As far as the record reveals, Howard did not make the claims now before us for years after the alleged wrong.
¶24. The Mississippi Supreme Court has held that a petitioner’s silence can be taken as evidence that counsel was following his wishes. In King v. State, 679 So.2d 208, 210-12 (Miss.1996), the defendants claimed that their decision not to testify was conditioned on their attorneys calling other witnesses in their defense. The supreme court noted that, as in today’s case, the trial judge had explained the Kings’ right to testify at length, without directly asking whether they intended to testify. The court held:
Given the knowledge that [then-Circuit] Judge Carlson had clearly and repeated[1] ly conveyed to the Kings, when their counsel rested without putting on any witnesses, the Kings could and should have objected, if in fact their counsel was indeed guilty of such egregious conduct. There are several methods which could have been utilized by the Kings in accomplishing this feat, all out of the hearing of the jury. During the trial, by side bar conference, the Kings could have asked to approach the bench and directly conveyed their complaints to the trial judge. They could have asked to go to chambers to discuss this sensitive subject matter. When both sides commenced going over jury instructions, this was the ideal time to tell the trial court that they had been misled by counsel and they wanted to offer other witnesses, or alternatively, testify themselves. And yet, the Kings remained silent, letting this perfect opportunity to expose their counsel’s supposed egregious ineffective assistance go by without a word. At that time the mistake, if indeed it was a mistake, was surely correctable by the trial court. All the Kings had to do was tell the trial court of their dilemma.
Id. at 210-11.
¶ 25. Admittedly, in King the trial judge had specifically invited the defendants to come to [1] him if they felt their attorneys were denying them the right to testify. Id. at 210. The supreme court noted that fact, but it did not condition its holding on it. See id. at 210-11. In our *572 case, the record reflects that Howard was willing and able to speak directly to the trial judge when required. Before the trial, Howard’s counsel informed the judge that Howard wanted to speak to him. Howard then personally requested á continuance to seek new representation. Although the court refused his request, the record gives no reason to suspect that Howard was afraid to speak to the judge directly or that counsel would or could have prevented him from doing so. Yet Howard remained silent after his attorney allegedly disregarded both his wishes and the instructions of the court.
¶ 26. Courtroom decorum or fear of the judge cannot excuse this silence. Howard seems to admit as much; he claims that his problem was that he did not know when to stand up and say he wanted to testify. That might excuse his failure to speak up immediately — if the claim were not belied by the fact that the trial judge had described the trial procedure in detail, on the record, at the beginning of the trial, and had Howard not just watched the prosecution conclude its case by “resting.”
¶27. Even if we believed Howard’s claims of ignorance, he surely would have noticed ^something was amiss at some point after his attorney rested the case — perhaps during the conference on jury instructions, or when the trial judge began instructing the jury by saying, “Members of the jury, you have heard all of the testimony....” And then there were the “closing” arguments.
¶ 28. Howard’s claims of ignorance and obliviousness are hard to believe given that, during sentencing, his attorney represented that Howard was a college student studying computer engineering. Howard himself admits that, at some point, he began asking his attorney when he was going to testify — he claims the attorney just kept telling him to wait. This claim is also difficult to accept, as the jury deliberated for more than three hours, giving Howard plenty of time to press the matter with his attorney or bring the matter to the attention of the judge. Two questions were submitted by the jury, both of which involved, to some degree, Howard’s decision not to testify. Then a verdict of guilty was returned, and Howard was sentenced.
¶ 29. Despite what he claims happened, Howard did not then fire his attorney; instead, the same attorney continued to represent Howard in his direct appeal of his conviction. See Howard v. State, 2 So.3d 669 (Miss.Ct.App.2008). Howard could have, but did not, raise this issue himself in a pro se brief on direct appeal. He actually filed a pro se petition for a writ of certiorari, in which he did not hesitate to attempt to raise new issues. Yet Howard was never heard to complain that his right to testify had been violated until his second motion seeking permission to file a PCR motion, years after the fact.
¶ 30. Also, with respect to the dissent, we do not agree that the issue is whether Howard affirmatively waived his right to testify. The Mississippi Supreme Court has never held that there must be an “affirmative showing” that the defendant had waived his right to testify. Instead, “[t]he accused in a criminal case may waive his or her right to testify, either intentionally or by his or her conduct, as long as such waiver is knowingly and voluntarily made.” 22A C.J.S. Criminal Law § 901 (2014). In Culberson v. State, 412 So.2d 1184, 1186 (Miss.1982), the seminal Mississippi case on this issue, the question was described as whether the trial court or defense counsel had denied the defendant the right to testify. In its order granting Howard an evidentiary hearing on Howard’s claims, the supreme court used the same language to describe them: *573 “Howard claims he was not permitted to testify.... He argues his counsel prevented him from doing so.” (Emphasis added). Howard himself admits that this is the relevant question.
¶ 31. Looking at how this issue is dealt with by other courts is instructive. Some treat the defendant’s failure to personally object when his attorney rests as an absolute, irrefutable waiver. See Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir.1991) (surveying cases). A “handful” of jurisdictions take the opposite approach and require the trial judge to secure a personal, express waiver in every casé. Id; State v. Walen, 563 N.W.2d 742, 751 (Minn.1997) (likewise).[2] Other courts, such as the Seventh Circuit in Underwood, take a third path, taking the defendant’s acquiescence as prima facie proof that counsel was following his wishes but still allowing the defendant an opportunity to prove his counsel had somehow denied him the opportunity to testify. Underwood, 939 F.2d at 475-76. Mississippi falls squarely in this third category. See Shelton v. State, 445 So.2d 844, 847 (Miss.1984).
¶ 32. In courts taking the third approach, the defendant bears the burden of proof, for reasons the Seventh Circuit explained:
There is a grave practical difficulty in establishing a mechanism that will protect a criminal defendant’s personal right (that is, a right that is not waivable by counsel) to testify in his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, “My lawyer wouldn’t let me testify. Therefore I’m entitled to a new trial.” That’s what Underwood did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, “I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf. My attorney told me I could not testify.”
Underwood, 939 F.2d at 475-76. It concluded:
The defendant need not protest and the judge need not question him, but in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.
Id. at 476.
¶ 33. The dissent relies on Dizon v. State, 749 So.2d 996 (Miss.1999), a case it admits is not on all fours with this one. The facts of Dizon are very distinguishable — there, the allegations that counsel had prevented Dizon from testifying were credible. Dizon’s attorney testified at the hearing and corroborated Dizon’s claims. Id. at 999-1000 (¶¶ 16-18). The attorney admitted that he did not recall advising Dizon of his right to testify. Id. at 999 (¶ 16). He went so far as to concede that he had only “assumed” Dizon did not want to testify, based on a one-word response to an ambiguous question. Id. The holding of Dizon is simply that the defendant had met his burden of proof in showing that his attorney denied him the right to testify. See Underwood, 939 F.2d at 475-76.
*574 ¶ 34. What the dissent finds compelling about Dizon is the supreme court’s closing admonitions that, when a defendant’s attorney says in his opening statement that his client will testify, the trial court “should” explain to the defendant that he has a right to testify and ask whether he intends to do so. Id. at 1000-01 (¶¶ 25-26).[3] We certainly agree with the dissent and the Dizon court that the trial judge should have obtained a direct and unimpeachable waiver from Howard himself. But the supreme court’s language was advisory in nature; the Dizon court describes questioning by the judge as the “most prudent course of action” and rejects the contention that it has created a “a hard and fast due process procedural right which must be complied with in each case.” Id.
¶ 35. That “should” in fact means should and not must is evidenced by our supreme court’s original decision on this issue in Culberson, 412 So.2d at 1186-87, which used the same language (emphasis added):
We suggest to the trial judges of the state that, in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify. If the defendant states he does not wish to testify, he may not be forced to take the stand; however, if he states that he wants to testify he should be permitted to do so. A record should be made of this so that no question about defendant’s waiver of his right to testify should ever arise in the future.
It had been argued that this created a blánket rule, but the supreme court has rejected that reading. Shelton, 445 So.2d at 847 (“[I]n Culberson we merely suggested that trial judges inquire into whether or not the defendant desired to testify, and while that suggestion was certainly strong, it was not mandatory.”).
¶ 36. Other courts have explained that there are certain “exceptional, narrowly defined” circumstances under which a trial judge may be required to personally ask the defendant whether he intends to testify. United States v. Pennycooke, 65 F.3d 9, 12 (3d Cir.1995). But we are unaware of any court requiring the trial judge to do so just because the attorney stated during his opening statement that he expected his client to testify. The Third Circuit cited the Seventh Circuit decision in Ortega v. O’Leary, 843 F.2d 258/261 (7th Cir.1988), as an example of sufficiently “exceptional” circumstances, where the defendant interrupted the proceedings to say he wanted to testify and claimed his attorney was “lying” when he said the defendant had decided not to testify. A similar situation occurred in Spearman v. State, 58 So.3d 30, 34-35 (¶¶ 13-14) (Miss.Ct.App.2011), where this Court found error after defense counsel rested his case immediately following the defendant’s assertion to the court that he did, in fact, want to testify.
¶ 37. The Third Circuit concluded in Pennycooke that requiring the judge to ask the defendant directly “is the exception, not the rule. Where the trial court has no reason to believe that the defendant’s own attorney is frustrating his or her desire to testify, a trial court has no affirmative duty to advise the defendant of the right to testify or to obtain an on-the-record waiver of such right.” Pennycooke, 65 F.3d at 13.
*575 ¶ 38. Today’s case does not rise to the level of Ortega or Spearman. Howard did not ever personally state on the record that he intended to testify, and certainly not immediately before his attorney rested the case, without any opportunity for him to have changed his mind, as was the case in Spearman. That Howard’s attorney said during his opening statement that he expected Howard to testify does suggest that Howard intended to testify — at the time — but it also suggests with equal force that the attorney was going to let him do it if he wanted to. After hearing the State’s limited proof and watching his attorney’s aggressive cross-examination of the victim, Howard could easily have changed his mind. The Appeals Court of Massachusetts has explained why defendants often wait until the last minute to decide whether to testify:
Unlike the broad strategic decision of waiving the right to trial by jury, which is made before trial begins, or pleading guilty, which is generally made before trial but, in all events, brings trial to an end, the decision whether the defendant shall take the stand is a tactical one. It is often reserved to await developments in the trial. Those developments may be such that taking the stand would be the lesser evil. Conversely, the trial’s course may be such that the wiser maneuver is not to expose the defendant to cross-examination before a jury or to a recital of his prior convictions.
Commonwealth v. Hennessey, 23 Mass.App.Ct. 384, 502 N.E.2d 943, 947 (1987) (footnotes omitted).
¶ 39. Another court has observed that the judge may be required to ask the defendant directly in instances where there could be “no rational explanation for the decision” not to testify. Sexton v. French, 163 F.3d 874, 882 n. 8 (4th Cir.1998) (citation omitted). In our case, as the trial judge noted in his findings following the evidentiary hearing, there were good reasons for Howard not to testify. Howard’s intent was, as he outlined it at the evidentiary hearing, to admit to most of the allegations and defend himself against charges of armed robbery by essentially admitting he had committed aggravated assault. Clearly a decision not to testify was at least rationally defensible.
¶40. We conclude that a challenge to the merits of the denial of the PCR motion was waived on appeal. In the alternative, the circuit court was acting within its discretion as the finder of fact when it denied Howard’s motion.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY JAMES, J.

. The jury asked about representations made by Howard’s attorney during his opening statement as to Howard's expected testimony of the events.

. Both Walen and Underwood count Mississippi as always requiring an express waiver, based on a misreading of Culberson.

. We reiterate that in today's case, the trial judge did inform Howard of his right to testify. He just did not press the issue further and ask Howard whether he wanted to testify or not.