# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00932-COA

WILLIE CARL PICKETT A/K/A WILLIE          APPELLANTS
PICKETT A/K/A WILLIE C. PICKETT AND
JACARRUS ANTYONE PICKETT A/K/A
JACARRUS PICKETT A/K/A ANTYONE
PICKETT A/K/A JACARRUS A. PICKETT

v.

STATE OF MISSISSIPPI                                  APPELLEE

DATE OF JUDGMENT:            06/07/2016
TRIAL JUDGE:                 HON. LESTER F. WILLIAMSON JR.
COURT FROM WHICH APPEALED:   LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:    OFFICE OF STATE PUBLIC DEFENDER
                             BY: JUSTIN TAYLOR COOK
                             ROBERT GREER WHITACRE
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ALICIA MARIE AINSWORTH
DISTRICT ATTORNEY:           BILBO MITCHELL
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 02/06/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.    Jacarrus Pickett and Willie Pickett were tried jointly and convicted of attempted first-degree murder. On appeal, they argue: (1) the indictment was improperly amended; (2) the indictment, as amended, is void; (3) the jury was improperly instructed on the elements of attempted murder; (4) Mississippi's attempted-murder statute is unconstitutional; and (5) the verdict was against the weight and sufficiency of the evidence. We find no error and affirm.

**FACTS**

¶2.    Walter Culpepper, James Taylor, and Decarlos Clark worked as garbage men in Meridian, Mississippi. On October 31, 2013, the men were assigned a route Clark had never worked. Clark told his supervisor that he could not go on the route because of a dispute with some men in that area. The supervisor told him to go on the assigned route or go home. So Clark worked the route with Culpepper and Taylor. Culpepper drove the truck, while Taylor and Clark rode on the back, loading garbage into the truck. Taylor testified that Clark appeared nervous and jittery. As they approached an area near Oakland Heights Elementary School, Clark told Taylor he had been in an altercation with someone in that area. Taylor then saw a tall, muscular man running toward the truck with a pistol. Clark recognized the man as Willie. Clark testified that Willie yelled at him, "I gotcha[.] I'm fixing to kill you, B****." Clark jumped into the cab of the truck and hid under the dash. Willie told Culpepper and Taylor to get out of the way if they did not want to be involved. Culpepper and Taylor fled. According to Clark, Willie fired multiple shots at the garbage truck. Clark testified that Willie only retreated either when his gun jammed or when he ran out of bullets. No one was struck.

¶3.    Clark testified that he exited the truck when he thought Willie was gone. Culpepper had returned at that point and asked Clark if he was okay. Just as Clark responded that he was okay, he heard Jacarrus yell, "Turn around, Willie, he ain't dead. But I'm fixing to kill him." Clark testified that Jacarrus then fired approximately fifteen rounds at him. Clark ran up a hill and escaped uninjured. Culpepper corroborated Clark's testimony that all the shots

2

were directed at Clark. Investigators recovered thirteen shell casings near the garbage truck, and found eight bullet holes in the hood, side mirror, windshield, and side window.

¶4. Jacarrus and Willie were convicted in the Lauderdale County Circuit Court of attempted first-degree murder. Jacarrus was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended, and five years of postrelease supervision. Willie was sentenced to thirty years in the custody of the MDOC, with ten years suspended, and five years of postrelease supervision. Posttrial motions were denied, and this appeal followed. Jacarrus and Willie have submitted separate briefs raising the same issues for appeal. Willie joins all arguments presented by Jacarrus, whose brief was filed first.

## DISCUSSION

### I. Amended Indictment

¶5. Jacarrus and Willie first argue that the circuit court erroneously allowed the State to amend the indictment on the second day of trial. "The circuit court's decision to allow an indictment to be amended is a question of law," which we review de novo. *Williams v. State*, 131 So. 3d 1174, 1176-77 (¶6) (Miss. 2014) (quoting *Powell v. State*, 80 So. 3d 849, 852 (¶9) (Miss. Ct. App. 2012)).

¶6. An indictment may be amended "to correct defects of form; however, defects of substance must be corrected by the grand jury." *Patton v. State*, 109 So. 3d 66, 80-81 (¶44) (Miss. 2012). An amendment to form does not "alter facts [that] are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the

indictment as it originally stood so as to prejudice the defendant's case." *Id.* "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood will be equally available after the amendment is made." *Id.* "Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." URCCC 7.09.[1]

¶7. The original indictment charged that on October 31, 2013, Jacarrus and Willie "wil[l]fully, unlawfully, and feloniously, with deliberate design to effect the death of . . . Clark, did attempt to kill and murder . . . Clark . . . by shooting him." On the second day of trial, after Culpepper had testified, the State made an ore tenus motion to amend the indictment by inserting the word "at" between the words "shooting" and "him," so the indictment would read that Jacarrus and Willie attempted "to kill and murder" Clark "by shooting *at* him," rather than "by shooting him." (Emphasis added). The prosecutor stated that the omission of the word "at" was a clerical error. Jacarrus and Willie objected. The trial court gave defense counsel additional time to research the issue, and after hearing arguments, granted the motion to amend.

¶8. Jacarrus and Willie argue that their defenses were prejudiced because, after the indictment was amended, they had to defend against shooting "at" Clark, rather than "shooting Clark." We cannot find the amendment altered the substance of the indictment or unfairly prejudiced the defense. Whether Clark was actually shot was not a question—it is

---

[1] The Uniform Rules of Circuit and County Court relative to criminal practice were preempted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017. We apply the former rules, as they were in effect at the time of trial.

4

undisputed that he was not. Nonetheless, Jacarrus and Willie assert that part of their defense strategy was to defend against the indictment's assertion that they attempted to kill Clark "by shooting him." During voir dire, Willie's counsel told the venire that it was "very hard to believe" that Clark was "shot at dozens of times, but was not shot." Arguably, this statement standing alone could indicate that Willie's defense was that he did not succeed in striking Clark with a bullet. However, further statements of counsel indicate otherwise.

¶9.    Willie's counsel went on to state during voir dire that "the State has to prove that Willie . . . *shot at* . . . Clark in an effort to kill him[.]" (Emphasis added). During opening statements, Willie's counsel told the jury that the State had to prove that "Clark was shot" to find Willie guilty. The State objected, arguing that it never alleged that Clark was shot; rather, the indictment stated that Clark was "shot at." The judge said, "it does say 'by shooting him.'" Willie's counsel continued, "The only person that is going to say he *got shot at or shot or whatever* he is going to say, is a convicted felon[.]" (Emphasis added). Jacarrus's counsel, during voir dire, stated that an alibi witness would testify that Jacarrus was at home when "Clark was being shot at, or claims to have been shot at[.]" Then, during opening statements, Jacarrus's counsel stated, "the State is going to say that [Jacarrus] was shooting at . . . Clark or shot him with the intent to kill him." Counsel continued that Jacarrus was "falsely accused of shooting at [Clark]." These are just some of the instances where defense counsel told the jury that Clark was "shot at," consistent with the amendment to the indictment, prior to the indictment being amended.

¶10.    The amendment to the indictment reflected the language used at trial and did not

5

prejudice the defense. The amendment did not change the nature of the charges and, thus, did not deprive Jacarrus or Willie of a fair opportunity to present their defense. Also, Jacarrus and Willie cannot claim unfair surprise, as they knew at all times that Clark was not actually shot, only shot at, and that this was the basis for the charges. This issue is without merit.

## II. Sufficiency of the Amended Indictment

¶11. Jacarrus and Willie argue that the amended indictment failed to charge the essential elements of attempted murder. "An indictment must contain (1) the essential elements of the crime charged, (2) sufficient facts to fairly inform the defendant of the charge which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Young v. State*, 119 So. 3d 309, 319 (¶11) (Miss. 2013). The sufficiency of an indictment is reviewed de novo. *Id.*

¶12. Mississippi's attempted-murder statute states: "Every person who shall design and endeavor to *commit an act which, if accomplished,* would constitute an offense of murder under [s]ection 97-3-19, but shall fail therein, or shall be prevented from committing the same, shall be guilty of attempted murder[.]" Miss. Code Ann. § 97-1-7(2) (Rev. 2014) (emphasis added). Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2017) states the killing of a human being shall be first-degree murder "[w]hen done with deliberate design to effect the death of the person killed, or of any human being."

¶13. The amended indictment charged that on October 31, 2013, Willie and Jacarrus "wil[l]fully, unlawfully, and feloniously, with deliberate design to effect the death of . . .

6

Clark, did attempt to kill and murder . . . Clark, a human being, without authority of law and not in necessary self-defense, by shooting at him." Jacarrus and Willie argue the amended indictment is deficient because it does not charge a specific "act which, if accomplished, would constitute an offense of murder." Rather, Jacarrus and Willie argue that the specific act charged—"shooting at" Clark—if accomplished, would constitute aggravated assault. *See* Miss. Code Ann. § 97-3-7(2)(a) (Supp. 2017).

¶14. We discussed the required proof for attempt versus the required elements of an attempt indictment in *Spearman v. State*, 58 So. 3d 30, 36 (¶20) (Miss. Ct. App. 2011), stating:

> An attempt has this required proof: (1) an attempt to commit a particular crime, (2) a direct ineffectual act done toward its commission[,] and (3) the failure to consummate its commission. Though those three elements must be proved, the [s]upreme [c]ourt . . . ha[s] held that [only] two elements need to be charged: (1) the intent to commit the offense, and (2) an overt act toward its commission.

(Quoting *Neal v. State*, 936 So. 2d 463, 467 (¶13) (Miss. Ct. App. 2006)).

¶15. Under the two factors in *Spearman*, the indictment was required to charge that: (1) Jacarrus and Willie intended to murder Clark, and (2) they committed an overt act toward murdering him. *Id.* The indictment charged that (1) they acted "with deliberate design to effect the death" of Clark by attempting to murder or kill him, and (2) they committed the overt act of "shooting at him." While Jacarrus and Willie argue that the indictment fails to specify whether they "failed" or were "prevented from" committing the act, the indictment uses the word "attempt," which has been held to put "a defendant on notice that the State will prove that the crime was not completed." *Id.* As the indictment charged that Jacarrus and

7

Willie "attempt[ed] to kill and murder" Clark, there was no need for it to also specify that they failed or were prevented from completing the act. This issue is without merit.

### III. Attempted-Murder Jury Instruction

¶16. Jacarrus and Willie argue that the elements jury instruction failed to include all the statutory elements of attempted murder. "Failure to instruct the jury on the essential elements of the crime is plain error." *Rogers v. State*, 95 So. 3d 623, 632 (¶30) (Miss. 2012).

¶17. The attempted-murder elements instructions required the jury to find beyond a reasonable doubt that:

1. On or about October 31, 2013, in Lauderdale County, Mississippi,

2. The [d]efendant, . . . individually or while aiding and abetting and/or acting in concert with another, did willfully and unlawfully attempt to murder . . . Clark

3. By shooting at him with a firearm,

4. With deliberate design to effect death,

5. Without authority of law and not in necessary self-defense[.]

¶18. Jacarrus and Willie argue, as they did in issue two, that "shooting at" someone is not "an act which, if accomplished, would constitute . . . [first-degree] murder." Miss. Code Ann. § 97-1-7(2). Again, attempted murder is committed when the defendant "design[s] and endeavor[s] to commit an act which, if accomplished, would constitute . . . [first-degree] murder . . . , but shall fail therein, or shall be prevented from committing the same[.]" *Id.* And first-degree murder is the "killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with deliberate design to effect the death of the

person killed, or of any human being[.]"

¶19.    In *Peyton v. State*, 286 So. 2d 817, 818 (Miss. 1973), Roosevelt Peyton was found guilty of attempted murder. Peyton went to the intended victim's home armed with a pistol, yelled that he was going to kill everyone at the home, and kicked the front door partially open. *Id.* at 820. The intended victim shot and injured Peyton; Peyton never fired a shot. *Id.* The supreme court upheld Peyton's attempted-murder conviction, finding that he "committed overt acts toward the consummation of the crime by attempting to forcibly enter his victim's home after arming himself with a deadly weapon," and "was prevented from carrying out his intent to murder only because his intended victim shot him first." *Id.*; *see also Duke v. State*, 340 So. 2d 727, 732 (Miss. 1977) (affirming an attempted-murder conviction in a murder-for-hire case).

¶20.    Jacarrus and Willie went one step further than Peyton. Not only did they approach Clark with guns drawn, verbally threaten to kill him, and say that they wanted him dead, they fired multiple shots at him as he tried to hide and escape. We find that Jacarrus's and Willie's acts of "shooting at" Clark "with a firearm" with the deliberate design to effect Clark's death are acts, which, if accomplished, would constitute first-degree murder. The jury was correctly instructed. This issue is without merit.

### IV.    Constitutionality of the Attempted-Murder Statute

¶21.    Jacarrus and Willie argue that the attempted-murder statute is vague and overly broad, and violates the Eighth Amendment's prohibition against cruel and unusual punishment. No challenge was made to the statute at trial. However, we review this issue on appeal, as a

conviction under an unconstitutional statute violates the Due Process Clause and is excepted from any procedural bar. *Fulgham v. State*, 47 So. 3d 698, 700 (¶6) (Miss. 2010); *Williams v. State*, 154 So. 3d 64, 66 (¶9) (Miss. Ct. App. 2014).

¶22. "[T]he power to create and define criminal offenses rests exclusively within the authority of the Legislature." *Wilcher v. State*, 227 So. 3d 890, 895 (¶28) (Miss. 2017) (citing *State v. Russell*, 358 So. 2d 409, 411 (Miss. 1978)). "The Legislature has the power to define and punish any act as criminal unless limited by constitutional provisions." *Id.* (citing *Brawner v. State*, 947 So. 2d 254, 268 (¶42) (Miss. 2006)). The challenging party must prove a statute's unconstitutionality beyond all reasonable doubt. *Id.* Even if the challenging party so proves, this Court must "uphold the statute, if possible, by placing a reasonable construction on it which would render it constitutional." *Id.*

¶23. A statute is unconstitutionally vague and violates due process if "persons of common intelligence must guess at its meaning and differ as to its application." *Id.* at 896 (¶29) (citation and internal quotation marks omitted). Likewise, a statute is void for vagueness if it "encourages arbitrary and erratic arrests and convictions." *Id.* "It is well established that vagueness challenges [that] do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Hill v. State*, 853 So. 2d 100, 103 (¶11) (Miss. 2003) (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975)).

¶24. A statute is "unconstitutionally overbroad if it 'does not aim specifically at evils within the allowable area of [s]tate control but, on the contrary sweeps within its ambit other activities' protected by the First Amendment." *Wilcher*, 227 So. 3d at 895 (¶26) (quoting

*Thornhill v. Alabama*, 310 U.S. 88, 97 (1940)). "[A] statute's overbreadth [must] be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)).

¶25. Section 97-1-7(2) does not implicate any First Amendment freedoms, so we analyze it under the facts of the present case. Ample testimony was presented that Jacarrus and Willie clearly intended to do what the statute forbids—they unlawfully shot at Clark with deliberate design to effect Clark's death. Witnesses heard Willie say, "I gotcha[.] I'm fixing to kill you, B****," as he ran toward Clark with a gun. Clark hid, and Willie told the other men present to get out of the way if they did not want to be involved. Willie then fired at Clark multiple times, only stopping when either his gun jammed or ran out of bullets. Once Clark came out from hiding, he saw Jacarrus, who, seeing that Willie had not successfully killed Clark, said, "Turn around, Willie, he ain't dead. But I'm fixing to kill him." Jacarrus then fired multiple shots at Clark. It is clear that the attempted-murder statute was intended to punish the crimes committed. No person of common intelligence would have to guess at its meaning or would differ as to its application, nor does the statute encourage arbitrary and erratic arrests. Thus, the statute is not unconstitutionally vague. Nor is the statute overly broad, as it does not "sweep[] within its ambit" other protected rights.

¶26. The statute also does not violate the Eighth Amendment. Jacarrus and Willie argue that the attempted-murder statute imposes a greater sentence for essentially the same crime as attempted aggravated assault.[2] However, our supreme court has held that:

---

[2] The statutory sentence for attempted murder is twenty years to life. Miss. Code Ann. § 97-1-7(2). The sentence for attempted aggravated assault is up to twenty years.

11

> [e]ven where there are two statutes covering the same crime, and there is a difference in the penalty between the two statutes, the [S]tate is under no obligation to prosecute under the statute with the lesser penalty. It may choose to prosecute under either, and so long as the choice is clear and unequivocal the defendant has no right to complain.

*Hye v. State*, 162 So. 3d 750, 758 (¶25) (Miss. 2015) (citation omitted). "[T]he responsibility to determine the charges" is left to the State alone. *Id.* at (¶26). The difference in sentencing between the two statutes does not violate the Eighth Amendment. This issue is without merit.

## V. Weight and Sufficiency of the Evidence

¶27. When reviewing the legal sufficiency of the evidence, we consider all evidence in the light most favorable to the State. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (abrogated on other grounds by *Little v. State*, 2014-CT-01505-SCT, 2017 WL 4546740, at *3 (¶19) (Miss. Oct. 12, 2017)). Credible evidence consistent with guilt must be accepted as true. *Id.* The State receives the benefit of all favorable inferences reasonably drawn from the evidence, and all matters of weight and credibility are resolved by the jury. *Id.* Reversal is proper when reasonable and fair-minded jurors could only find the accused not guilty. *Id.*

¶28. When reviewing the weight of the evidence, "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at 844 (¶18). The evidence is viewed in the light most favorable to the verdict. *Id.* All evidence consistent with the defendant's guilt, along

---

Miss. Code Ann. § 97-3-7(2)(a). On their attempted-murder convictions, Jacarrus was sentenced to twenty-five years, with ten years suspended, and five years of postrelease supervision; and Willie was sentenced to thirty years, with ten years suspended, and five years of postrelease supervision.

with any reasonable inferences that might be drawn from the evidence, is accepted as true. *Id.*

¶29. Clark, Culpepper, and Taylor testified to the events surrounding the shooting. Clark testified that he did not want to go on the assigned garbage route because he had gotten into an altercation with some men in that area. Taylor confirmed that Clark was nervous and jittery as they approached an area near Oakland Heights Elementary School, and Clark told Taylor he had been in an altercation with someone near there. Taylor saw a man running toward the truck with a pistol. Clark, who recognized the man as Willie, heard Willie say, "I gotcha[.] I'm fixing to kill you, B****." Clark jumped into the cab of the truck and hid under the dash. Willie told Culpepper and Taylor to get out of the way if they did not want to be involved. Willie then fired multiple shots at the garbage truck. Clark testified that he exited the truck when he thought Willie was gone. Jacarrus then appeared and yelled, "Turn around, Willie, he ain't dead. But I'm fixing to kill him." Jacarrus then fired multiple rounds at him. Clark testified that all shots were directed at him, and Culpepper corroborated this testimony. Investigators recovered thirteen shell casings near the garbage truck, and discovered eight bullet holes in the hood, side mirror, windshield, and side window.

¶30. Giving the State the benefit of all favorable inferences and viewing the evidence in the light most favorable to the verdicts, the verdicts were not against the weight or sufficiency of the evidence. This issue is without merit. The attempted-murder convictions are affirmed.

¶31. **AFFIRMED.**

13

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**