# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KM-00109-COA

| | |
|---|---|
| **JAMES BURKE A/K/A JAMES CLINTON BURKE** | **APPELLANT** |

**v.**

| | |
|---|---|
| **STATE OF MISSISSIPPI** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 01/11/2017 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | V.W. CARMODY JR. |
| ATTORNEY FOR APPELLEE: | DAVID RINGER |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 04/24/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., WESTBROOKS AND TINDELL, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. James Burke pleaded no contest to a charge for driving under the influence (DUI). Burke appealed the municipal court's judgment of conviction to the Rankin County Court. The county court found Burke guilty of the DUI charge — his first offense for DUI. Burke filed a motion to reconsider, and the county court denied that motion. Burke appealed the county court's decision to the Rankin County Circuit Court, and the court affirmed Burke's conviction. Aggrieved, Burke now appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On October 4, 2011, Burke was involved in a single-car accident. The vehicle became engulfed in flames while Burke was still inside and passed out. Two civilians stopped to

assist getting Burke out of the burning truck. Sergeant Tony Bunkley of the Florence Police Department arrived first at the scene and joined the civilians' rescue effort. Officer Jason Goad arrived on the scene in time to help Bunkley and the two civilians pull Burke out of the burning vehicle. Goad testified that when he grabbed Burke to pull him out, Goad smelled a pungent odor of alcohol on Burke's person.

¶3. Bunkley attempted to speak with Burke after retrieving him from the vehicle and noticed that Burke was swaying. Bunkley asked Burke for his location prior to the accident, and Burke responded that he was coming from a local bar. Bunkley smelled the odor of alcohol on Burke's breath and noticed that his speech was slurred. Bunkley also observed that Burke's eyes were glassy, and his pupils were dilated. Bunkley began to believe that Burke was intoxicated.

¶4. According to Bunkley, he did not perform a field-sobriety test because of the injuries Burke sustained in the crash. Burke was taken to the hospital, where he refused to consent to blood testing. Bunkley went to the hospital and spoke with Burke. Burke admitted that he was a recovering drug-addict and alcoholic and just had relapsed. According to Bunkley, Burke also admitted to having a beer at the bar.

¶5. As a result of the circumstances surrounding Burke's accident, Bunkley believed that Burke was driving under the influence of alcohol. Bunkley arrested Burke and charged him with DUI. Burke pleaded no contest before the municipal court. He then appealed to the county court for de novo proceedings. After a trial, the county court also found Burke guilty of the DUI charge. Burke then appealed to the circuit court, which affirmed the trial court's

decision.

¶6. During trial, Bunkley testified that in his experience as a law enforcement officer, he believed Burke was intoxicated. Bunkley also testified that the two civilians who assisted with removing Burke from his truck stated that they noticed Burke weaving on the highway in front of them, and when they saw the truck again, it was toppled and on fire.

¶7. Additionally, Burke tendered Dr. Jimmie Valentine as an expert witness in the area of pharmacology and toxicology, as well as an expert in concussions. The State only objected to Dr. Valentine's qualification as an expert on the effect of concussions. The basis for the State's objection to Dr. Valentine's opinion on the subject of concussions was his testimony during voir dire. The trial court subsequently refused to admit Dr. Valentine's expert opinion on concussions.

¶8. Aggrieved, Burke now appeals to this Court. On appeal, Burke argues that (1) improper hearsay testimony was admitted; (2) Dr. Valentine was improperly excluded as an expert; (3) improper lay opinion was admitted; and (4) the conviction was against the overwhelming weight of the evidence.

## DISCUSSION

### I. Whether part of Bunkley's testimony was improper hearsay.

¶9. Burke argues that Bunkley's testimony was part hearsay because he testified to the statements of the civilians that came to his aid following the accident. Burke maintains that the civilians were not present in the courtroom and that their statements did not fall within a hearsay exception. Burke contends that the statements of the two motorists were offered

3

to prove the truth of the matter asserted. The testimony at issue is as follows:

> Both of the civilians advised me that the truck that Mr. Burke was in, that they had both observed it driving, weaving in the roadway on 49. It had passed both of them. And they didn't see the truck after it passed them until they topped Red Hill and saw it on fire, wrecked.

Burke's trial counsel objected to Bunkley's testimony; however, the trial court allowed the evidence finding that it was an excited utterance.

¶10.    Burke maintains that the Stated failed to prove that the statements were spontaneous. Burke further argues that the State failed to put on any evidence or testimony that showed the declarants were under any sort of stress or excitement from simply witnessing Burke's truck weaving in the roadway. Burke argues that the bystanders were not involved in the accident, did not witness the truck roll, and did not witness the crash. Therefore, Burke asserts that the statements cannot fall within the excited-utterance exception. The State responds that the trial court correctly allowed the testimony because the eyewitness statements were spontaneous.

¶11.    "Mississippi Rule of Evidence 803(2) states that an excited utterance is 'a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" *Barron v. State*, 130 So. 3d 531, 538 (¶21) (Miss. Ct. App. 2013). "[U]nder the excited utterance exception the fact that questions are asked, while relevant to spontaneity, does not ipso facto demonstrate a lack of spontaneity in every case." *Sanders v. State*, 586 So. 2d 792, 795 (Miss. 1991). Where the excited utterance is prompted by a simple question, even from an officer, such as "What happened?"

or "What's wrong?" we still have found the statement to fall under the exception. *Id*.

¶12.   Here, Bunkley asked the two motorists, who had just assisted in pulling Burke from an inflamed vehicle, what they witnessed prior to the accident.  The statements immediately followed the dangerous single-car accident, and the trial court found that they at least would fall under the excited-utterance rule.  We agree. While the motorists did not witness the actual accident, they clearly were under the stress of assisting Burke's rescue from a wrecked, burning truck immediately after seeing him weaving on the highway.  Accordingly, we find no error.

        II.     *Whether the bystanders' statements violated the Confrontation Clause.*

¶13.   For the first time on appeal, Burke asserts that even if the bystanders' statements fell under the excited-utterance rule, they should still be excluded for violating the Confrontation Clause.  Despite Burke's failure to object on the basis of the Confrontation Clause during the trial, it is a fundamental, substantive right he can raise now.  The Mississippi Supreme Court has held that "[u]nder the plain-error doctrine, [a reviewing court] can recognize obvious error that was not properly raised by the defendant and which affects a defendant's fundamental, substantive right." *Hingle v. State*, 153 So. 3d 659, 662 (¶6) (Miss. 2014) (internal quotation marks omitted).  Moreover, the Court held "that a Confrontation Clause violation is a violation of a fundamental, substantive right." *Id.*  Although we do not find this issue dispositive of Burke's appeal, we will briefly address it.

¶14.   The United States Supreme Court held "that testimonial hearsay must be filtered

5

through the Confrontation Clause." *Smith v. State*, 986 So. 2d 290, 297 (¶20) (Miss. 2008) (citing *Crawford v. Washington*, 541 U.S. 36, 53 (2004)). "The Mississippi Supreme Court has concluded that a statement is testimonial when it is given to the police or individuals working in connection with the police for the purpose of prosecuting the accused." *Eubanks v. State*, 28 So. 3d 607, 612 (¶28) (Miss. Ct. App. 2009) (internal quotation marks omitted). Additionally, "statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Smith*, 986 So. 2d at 297 (¶21) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). As stated, Bunkley asked the bystanders what they had witnessed to assess the emergency at hand: the one car accident. Accordingly, we do not find that Bunkley's testimony of interacting with the bystanders violated the Confrontation Clause, as it was nontestimonial. Therefore, we find no error.

> III.     Whether the trial court erred in excluding Dr. Valentine's expert testimony on concussions.

¶15.    Next, Burke argues that the exclusion of Dr. Valentine's testimony regarding head injuries and their similarities to alcohol impairment was in error. Burke maintains that Dr. Valentine satisfied Rule 702, as to expert testimony. Burke explained that Dr. Valentine's opinion would have aided the trial court in arriving to a decision. Burke asserts that Dr. Valentine was a trained pharmacologist and toxicologist and has worked closely with medical doctors.

¶16.    Burke asserts that because part of his defense was that his accident could have caused disorientation or a concussion as a result of the vehicle rolling over, Dr. Valentine should

6

have been permitted to testify as to concussions and how they resemble alcohol impairment. However, during voir dire, Dr. Valentine conceded that he was not a medical doctor and further acknowledged that he was not a doctor in osteopathy. The State notes that Dr. Valentine could not prescribe medicine and conceded that diagnosing concussions was beyond his purview.

¶17. "Under Rule 702, expert testimony should be admitted only if it withstands a two-pronged inquiry." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 35 (¶7) (Miss. 2003). "First, the witness must be qualified by virtue of his or her knowledge, skill, experience or education." *Id.* (citing M.R.E. 702). "Second, the witness's scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue." *Id.* In addition, "Rule 702 does not relax the traditional standards for determining that the witness is indeed qualified to speak an opinion on a matter within a purported field of knowledge." *Id*.

¶18. We find that Dr. Valentine was not qualified to testify as to concussions and how disorientation could mimic alcohol impairment. Dr. Valentine was not a medical doctor, could not prescribe medicine, and conceded that diagnosing concussions was beyond his purview. Accordingly, we find no error.

IV. *Whether improper lay opinion was admitted*.

¶19. Burke further argues that the police officer who responded to the accident provided expert testimony without being qualified. However, two officers were at the scene of the accident, and two officers testified during trial. Burke does not indicate which testimony he

argues is improper.

¶20.    Burke concedes that the error was not preserved for appeal; however, he petitions this Court to review the issue under the doctrine of plain error. We decline to address this issue under that doctrine because Burke failed to identify which officer's testimony was allegedly improper lay testimony. While it can be inferred that Burke is referring to Bunkley's testimony, Burke does not properly identify him. As a result, Burke failed to preserve this error on appeal. Accordingly, we decline to further address this issue.

V.    *Whether the verdict is against the overwhelming weight of the evidence.*

¶21.    Burke also argues that the verdict was against the weight of the evidence. He maintains that his guilty verdict rested on improper hearsay testimony and improper lay opinion. Burke explains that the unspecified officer's lay testimony was highly prejudicial to his case, and notes that the evidence of impairment was inadequate to support a guilty verdict. We do not agree.

¶22.    Burke admitted to Bunkley that he was leaving a local bar when the accident occurred. Burke had a pungent smell of alcohol on his person and admitted at the hospital that he had a drinking problem. Burke also appeared heavily intoxicated, as he exhibited slurred speech and an inability to stand upright without swaying back and forth. Burke admitted that he had an alcohol relapse on the night of his accident. This Court has held that "[i]n cases where the defendant's blood-alcohol results are unavailable but there is sufficient evidence that the defendant operated a vehicle under circumstances indicating his ability to operate the vehicle was impaired by the consumption of alcohol, common law DUI can be proven." *Knight v.*

*State*, 14 So. 3d 76, 79 (¶6) (Miss. Ct. App. 2009) (internal quotation marks omitted).

¶23.   Further, "[w]hen determining whether a verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict." *Id.* at (¶5) (citing *Jones v. State*, 958 So. 2d 840, 843 (¶6) (Miss. Ct. App. 2007)).  Accordingly, we find that the verdict is not contrary to the overwhelming weight of the evidence.

¶24.   **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.**