# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00614-COA

**JERRY BEALE, JR. A/K/A JERRY BEALE A/K/A JERRY LEE BEALE A/K/A JERRY LEE BEALE JUNIOR A/K/A JERRY LEE BEALE, JR.**        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2020 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: META S. COPELAND |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/26/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

McCARTY, J., FOR THE COURT:

¶1. A defendant was charged with three counts of attempted murder of three police officers after a domestic disturbance 911 call. He was convicted of two counts of attempted murder of two of the three police officers. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In the late hours of the night on June 8, 2018, Piccola Thomas was awoken in her apartment by a fight that had broken out between her sister and her sister's boyfriend, Jerry Beale. Piccola told the couple to leave her apartment. Piccola's sister left, but Beale refused

to leave. Piccola threatened to call the police, but Beale still would not leave her apartment. Instead, Beale responded and told her to go ahead and call the police because he was going to "light this b*tch up."

¶3.     Piccola eventually called 911. She told the 911 operator that Beale was armed, was making threats, and had been drinking, and she wanted him to leave the apartment. The 911 operator subsequently sent this information to a police dispatcher, who proceeded to put a call out to the police. The first police officer to arrive on the scene was Colin Hall, and Officers Mary Fite and Brantson Vuncannon arrived shortly afterward.

¶4.     Officer Hall testified that based on what he learned from police dispatch, he was called to the scene because a male inside the apartment was "belligerent" and "making threats." Piccola told Officer Hall that Beale had been drinking all night and appeared to be "heavily intoxicated," was armed, and had said that if the police were called that he was going to kill them.

¶5.     Once inside the apartment, Officer Hall testified that they heard Beale repeatedly screaming, "I don't talk to no f'ing police." Officer Hall stated that two or three times they announced their presence inside the apartment, making it known that the police were coming inside. The three officers started going up the stairs and saw Beale at the top. Beale was shirtless, drinking a beer, and pacing back and forth with a pistol jammed in his waistband. After the officers saw the pistol, they drew their service weapons. According to Officer Hall, Beale was completely ignoring the officers and their commands.

¶6.     Officer Hall testified that he began to give Beale commands to put his hands on his

2

head; Beale refused. The three officers holstered their guns and readied their tasers, still attempting to get Beale to comply. In an attempt to regain control of the situation, Officer Hall fired his taser at Beale. Officer Fite also aimed and fired her taser at Beale. Officer Hall's taser hit Beale but did not incapacitate him. In response, Beale immediately drew his gun and fired it at the officers.

¶7. Officer Hall recounted how he saw the gun pointed directly at him and only remembered hearing the "bang, bang, bang" as Beale fired. Officer Fite would later testify she saw Beale's pistol pointed at her face as well.

¶8. When Beale shot at the officers, all three of them immediately retreated. While Officer Hall took cover in a bedroom, he called police dispatch and reported the shooting and requested backup. He also requested an ambulance because he had seen blood on the floor and was concerned that he had been shot. Meanwhile, Officers Fite and Vuncannon retreated downstairs. Beale shut himself inside the bathroom.

¶9. When backup arrived, authorities continued to give Beale commands to come out of the bathroom and surrender. Beale ignored them at first but eventually opened the bathroom door and threw his loaded pistol down the stairs. Still belligerent, Beale refused to follow with orders to get on his knees and put his hands on his head. In the end, after being tased a second time, eight officers were eventually able to get Beale into custody.

¶10. Beale was indicted for three counts of attempted murder of three police officers. During trial, a crime scene technician explained he recovered three .40-caliber shell casings in the upstairs apartment area. An officer also recovered Beale's .40-caliber gun from where

3

he had thrown it down the stairs. Bryan Rosenberg described for the jury the bullet holes that could be seen in photographs that depicted Beale had fired shots at the officers. All three officers testified that they believed Beale was shooting at them in order to kill them.

¶11. The jury convicted Beale of the attempted murder of Officers Hall and Fite and found Beale not guilty of the attempted murder of Officer Vuncannon. The trial court sentenced Beale to serve thirty-five years in the custody of the Mississippi Department of Corrections with five years of post-release supervision. Aggrieved, Beale now appeals.

## ANALYSIS

### I. Beale's indictment correctly stated the necessary elements of attempted murder.

¶12. In his first issue raised on appeal, Beale attacks the indictment as insufficient. Specifically, he argues that his indictment was defective because it failed to include an essential element of just how Beale attempted to kill Officers Hall and Fite. In other words, Beale argues that the indictment is defective for the failure to allege *what act* Beale committed in furtherance of his attempt to kill the officers.

¶13. "[W]hether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or de novo review." *Morton v. State*, 246 So. 3d 895, 902 (¶13) (Miss. Ct. App. 2017).

¶14. The Mississippi Rules of Criminal Procedure state, "[t]he indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." MRCrP 14.1(a)(1); *accord Mitchell v State*, 327 So. 3d

4

142, 151-52 (¶42) (Miss. Ct. App. 2021). "The purpose of an indictment is to satisfy the constitutional requirement that a 'defendant be informed of the nature and cause of the accusation.'" *Mitchell*, 327 So. 3d at 151 (¶40) (quoting U.S. Const. amend. VI); *see* Miss. Const. art. 3, § 26 ("[T]he accused shall have a right . . . to demand the nature and cause of the accusation"). "The purpose of these requirements is to ensure that criminal defendants have a fair and adequate opportunity to prepare for and defend against the charges brought against them by the government." *Id*. at (¶41). "Therefore, in order for an indictment to be sufficient, it must contain the essential elements of the crime charged." *Id*. (quoting *Tran v. State*, 962 So. 2d 1237, 1241 (¶16) (Miss. 2007)).

¶15.   Generally, if the indictment tracks the language of a criminal statute, then it "is sufficient to inform the defendant of the charge against him." *Dobbins v. State*, 172 So. 3d 803, 804 (¶4) (Miss. Ct. App. 2013). An indictment that tracks the language of the statute is generally sufficient to inform the accused of the charge against her, as long as the statute "fully, directly, and expressly, without any uncertainty or ambiguity," sets out all the elements necessary for the offense. *Sallie v. State*, 230 So. 3d 312, 314 (¶8) (Miss. Ct. App. 2017).

¶16.   However, indictments charging most attempted crimes require more than just the language of the statute. "Depending on the nature of the case and language of the statute, some indictments may need additional words or facts to sufficiently put a defendant on notice." *Mitchell*, 327 So. 3d at 152 (¶43). Indictments charging a defendant with an attempted crime must describe the overt act. *Id*. (citing *Ishee v. State*, 799 So. 2d 70, 73 (¶5)

5

(explaining "it is necessary to charge and prove some overt act done toward commission of offense" (internal quotation marks omitted)); *Short v. State*, 990 So. 2d 818, 819 (¶3) (Miss. Ct. App. 2008) ("In order to indict a defendant for an attempted crime, the indictment must set out with certainty the specific conduct that the State asserts to be the overt act").

### A. The Development of the Attempt Statute

¶17. Originally, the attempt statute was quite broad, criminalizing "*any* act towards the commission of such offence . . . ." Hutchinson's Code (1848) ch. 64, art. 12, title 8, § 3, at 980 (emphasis added). Over time, the Legislature modified the "any act" language to a more confined phrase still in use today: the "overt act." Hemingway's Code (1917) § 777, at 635. From 1948 through 2013, the attempt law stayed substantially the same and required proof of an "overt act." *See* Miss. Code Ann. § 97-1-7 (Rev. 2006).

¶18. In 2013, the Legislature significantly expanded the statute by the addition of a new subsection: § 97-1-7(2).[1] Unlike subsection 1, which requires the description of an overt act, the new subsection 2 was different. *Id*. Section 97-1-7(2) expressly stated that "[e]very person who shall design and endeavor to commit *an act* which, if accomplished, would constitute an offense of murder under Section 97-3-19, but shall fail therein, or shall be prevented from committing the same, shall be guilty of attempted murder." Miss. Code Ann. § 97-1-7(2) (Rev. 2014) (emphasis added). In other words, section 97-1-7(2) omits the "overt act" language that is required in section 97-7-1(1), and instead, simply requires "an act" of attempted murder.

---

[1] *See* Miss. Laws ch. 510 § 1 (H.B. 28).

6

## B. Beale's Indictment for Attempted Murder

¶19. Beale was indicted for attempted murder under subsection 2 of the attempt statute. In this case, Beale was indicted on three counts of attempted murder, each of which is identical in its language except for the name of the officer. In Counts I-III, Beale was indicted under Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2017), which alleged in pertinent part that on or about June 7, 2018, Beale "did willfully, unlawfully, and feloniously, attempt to kill Officer [(name)], a human being . . . [and] acted with the deliberate design to effect the death of Officer [(name)], but failed to successfully complete the act, in direct violation of Section 97-3-19(1)(a) . . . ." Section 97-3-19(1)(a) states the killing of a human being shall be first-degree murder "[w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]"

## C. Interpreting the 2013-Enacted Attempt Statute

¶20. In its response to Beale's assignment of error that his indictment was insufficient, the State claims that "Mississippi's appellate courts have not addressed whether an overt act is an essential element of an indictment for attempted murder" and urges that we find Beale's indictment was not flawed for its admitted lack of specificity of an overt act.

¶21. Nonetheless, we have previously addressed the sufficiency of an indictment for attempted murder under the amended statute. In a recent case from our Court, a defendant was convicted for attempted murder, armed robbery, and burglary of a dwelling. *Morton*, 246 So. 3d at 899 (¶1). Like the defendant in this case, Morton claimed that the indictment was "fatally defective for failure to charge an essential element of the crime." *Id*. at 902

7

(¶12). Specifically, he argued the indictment failed to state "whether he failed to complete or was prevented from completing the act of murder." *Id*. (citations omitted).

¶22. We held that "[u]sing the word 'attempt' puts a defendant on notice that the State will prove that the crime was not completed." *Id*. at 903 (¶15). So Morton's indictment "sufficiently notified him of the charge against him—namely, attempted murder." *Id*. at (¶16). "The indictment used the word 'attempt,' as well as contained the language that the crime, 'if accomplished, would constitute an offense of murder,' indicating the incompleteness of the attempted crime." *Id*.

¶23. Like the indictment in *Morton*, Beale's indictment used the word "attempt." Additionally, it contained the statutory language that Beale "acted with the deliberate design to effect the death of [the officer], but failed to successfully complete the act," which indicates the failure to complete the attempted crime. Therefore, in accord with *Morton*, we find that Beale's indictment sufficiently notified him of the charge against him—attempted murder. *See also Pickett v. State*, 252 So. 3d 40, 46-47 (¶15) (Miss. Ct. App. 2018) (holding "the indictment use[d] the word 'attempt,' which has been held to put a defendant on notice that the State will prove that the crime was not completed"). Under the authority of *Pickett* and *Morton*, we find that Beale's indictment was sufficient.

¶24. However, Beale centers his precise argument on a line of cases that require the addition of an "overt act" in an indictment for an attempted crime. We take this opportunity to clarify our holdings in *Pickett* and *Morton* to expressly rule that an indictment for attempted murder pursuant to section 97-1-7(2) does not require the description of an "overt

8

act."

¶25.    We reach this conclusion via an examination of the language of the statute itself.  The most fundamental rule of statutory construction is the plain-meaning rule, which provides that if a statute is not ambiguous, then this Court must apply the statute according to its terms.  *State ex rel. Hood v. Madison Cnty. ex rel. Madison Cnty. Bd. of Sup'rs*, 873 So. 2d 85, 90 (¶19) (Miss. 2004).  It is also a basic tool of interpretation "that a specific statute controls over a general statute."  *Id*. at (¶22).

¶26.    As stated above, section 97-1-7(2) states that "[e]very person who shall design and endeavor to commit *an act* which, if accomplished, would constitute an offense of murder under Section 97-3-19 . . . ." (emphasis added).  In contrast, section 97-1-7(1) states that "[e]very person who shall design and endeavor to commit an offense, and shall do *any overt act* toward the commission thereof . . . ."  Miss. Code Ann. § 97-1-7(1) (emphasis added).  Beale was charged with attempted murder, and a plain reading of the statute does not require the description of an "overt act."  Furthermore, as subsection 2 is more specific in its focus—only on the crime of "an act which, if accomplished, would constitute an offense of murder"—this specific subsection will be read without the general requirement of "an overt act."

¶27.    When the Legislature expanded the attempt statute in 2013 and enacted a new subsection focusing exclusively on attempted murder, it pointedly did not include the requirement of an "overt act" in subsection 1.  Even if the language of the statute were not plain and unambiguous, our precedent reminds us that "where a statute enumerates and

9

specifies the subject or things upon which it is to operate, it is to be construed as *excluding* from its effect all those not expressly mentioned or under a general clause." *Harper v. Banks, Finley, White & Co. of Miss. P.C.*, 167 So. 3d 1155, 1162 (¶15) (Miss. 2015) (citations omitted). This "common rule of statutory construction is *expressio unius est exclusio alterius*, which translates as 'expression of the one is exclusion of the other.'" *Id*. Therefore we are compelled to find that the Legislature, in using the language of "an act" in the attempted murder subsection 2 as opposed to the "overt act" language of subsection 1, did not require the description of an overt act in an indictment for attempted murder.[2]

¶28. Because the Legislature did not include a requirement to describe an overt act in an indictment under the attempted murder statute, we hold an indictment for this crime does not require the  description of  an overt act. As a result, we find the indictment in this case was sufficient.[3]

---

[2] The separate opinion by Judge Westbrooks urges that we should interpret subsection 2 as including the phrase "overt act," even though that language is not present in the statute. Given the history of the general attempt statute recounted above and the Legislature's decision to draft this subsection without the phrase "overt act," we cannot agree that it should read into the statute. "To adopt [this] argument would require us to rewrite the statute," which we decline to do in accord with precedent. *Culberson v. State*, 612 So. 2d 342, 346 (Miss. 1992) (rejecting argument to interpret the PCR statute contrary to the language  drafted by the Legislature). While the separate opinion criticizes the statute as possibly "leav[ing] the door open for the State to change its proof later on down the road," the constitutionality of the statute was not challenged in today's case. To the extent the statute could have been drafted in a different manner, "the wisdom or folly of the pertinent legislation is strictly within the constitutional power of the Legislature." *Miss. State Univ. v. PETA*, 992 So. 2d 595, 610 (¶26) (Miss. 2008).

[3] In addition, the separate opinion relies on *Green v. State*, 269 So. 3d 75 (Miss. 2018), for the proposition that an indictment must include an overt act. However, the *Green* Court did not have before it the issue of whether the indictment was sufficient. Instead, it addressed an issue that was not raised in this appeal and is not before this Court, which was

**II. Jury instructions 8 and 9 did not constitute a constructive amendment to the indictment.**

¶29. Beale argues that there is a "variance" in the jury instructions and the indictment in this case. More specifically, Beale's argument is that the elements included in jury instructions 8 and 9 are more specific and include the act Beale was supposed to have committed in furtherance of his attempt to murder the officers. Because jury instructions 8 and 9 contain more specific language, Beale argues that the instructions constituted a constructive amendment to his indictment.

¶30. "Jury instructions are generally within the discretion of the trial court[,] and the settled standard of review is abuse of discretion." *Kivinen v. State*, 314 So. 3d 167, 170 (¶14) (Miss. Ct. App. 2021). Additionally, the "[f]ailure to instruct the jury as to an essential element of the crime is reversible error." *Id*. at (¶15) (quoting *Brown v. State*, 225 So. 3d 1263, 1273 (¶35) (Miss. Ct. App. 2016), *rev'd on other grounds*, 222 So. 3d 302 (Miss. 2017)).

¶31. First, Beale failed to object to instructions 8 and 9 at trial. "This Court has held that when a defendant fails to object to a jury instruction at trial, the defendant is procedurally barred from challenging the instruction on appeal." *McGilvary v. State*, 290 So. 3d 1273, 1280 (¶24) (Miss. Ct. App. 2020). Accordingly, Beale's issue is procedurally barred.

¶32. Notwithstanding the procedural bar, we also find that the instructions do not constitute a constructive amendment. Our Supreme Court has explained this concept:

> A constructive amendment of an indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. A constructive amendment of an

---

whether sufficient evidence existed to convict Green of attempted murder. *Id*. at 79 (¶11).

11

indictment is reversible per se. Reversal is automatic because the defendant may have been convicted on a ground not charged in the indictment.

*Id*. at (¶25). Further, "[a] constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements alleged by the grand jury in its indictment.*" Collins v. State*, 305 So. 3d 1262, 1266 (¶17) (Miss. Ct. App. 2020). But "[n]ot all variances between the indictment and instructions constitute a constructive amendment." *McGilvary*, 290 So. 3d at 1280 (¶25). Instead, courts are required to determine "whether the variance is such as to substantially alter the elements of proof necessary for a conviction." *Id*. "As long as the change does not 'materially alter facts which are the essence of the offense on the fact of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood' in a way that would prejudice the defendant's case, then the amendment is permissible." *Morton*, 246 So. 3d at 904 (¶20) (quoting *Miller v. State*, 740 So. 2d 858, 862 (¶13) (Miss. 1999)). Therefore this issue requires us to compare the indictment with the jury instructions.

¶33. The indictment in this case alleges that Beale "did willfully, unlawfully, and feloniously, attempt to kill Officer Collin Hall, a human being . . . [and] acted with the deliberate design to effect the death of Officer Collin Hall, but failed to successfully complete the act. . . ." The indictment identifies attempted murder as the offense and "Section 97-3-19(1)(a)" as the relevant Code section.

¶34. Conversely, the phrase "shoot at" appears in the jury instruction, but not in Beale's indictment. The next question then becomes whether the phrase "shoot at" is so substantial

12

that it alters the elements of proof necessary for a conviction. *See McGilvary*, 290 So. 3d at 1280 (¶24).

¶35. Here, the jury convicted Beale based upon all the required elements of attempted murder, as stated in jury instructions 8 and 9. The fact that the instructions include the phrase "shoot at" does not substantially alter the elements or proof necessary to find Beale guilty of attempted murder. Again, "[n]ot all variances between the indictment and instructions constitute a constructive amendment." *Id*. at 1280 (¶25). And "[w]hile jury instructions should track the language in the indictment, their failure to do so is not fatally defective, so long as they do accurately follow the requisite elements of the crime." *Morton*, 246 So. 3d at 903 (¶19) (quoting *Neal v. State*, 15 So. 3d 388, 398 (¶16) (Miss. 2009)).

¶36. The Court considered a very similar issue in *Morton*. *Id*. at (¶17). There, the defendant claimed that the jury instructions given for the attempted murder charge omitted an essential element and varied materially from his indictment. *Id*. Morton's claim rested on the fact that the jury instructions omitted the words "under such circumstances, that, if accomplished, would constitute an offense of murder," and as a result, the instructions omitted an essential element of the crime. *Id*. at (¶19). The Court disagreed, finding that the instruction correctly stated the essential elements of attempted murder because the jury was instructed that in order to convict Morton of attempted murder, it "had to find beyond a reasonable doubt that Morton had intended to commit murder, attempted to do so, and failed to do so." *Id*. at 904 (¶21).

¶37. As was the case in *Morton*, the same rationale can be applied in the instant case. Like

*Morton*, the jury in Beale's case was instructed via instructions 8 and 9 that to convict Beale of attempted murder, it had to find beyond a reasonable doubt that Beale had intended to commit murder, attempted to do so, and failed to do so. The fact that "shoot at" appears in the jury instructions and not the indictment does not rise to the level of constructively amending his indictment.

¶38.    Therefore, jury instructions 8 and 9 effectively laid out all the essential elements of attempted murder, despite including the words "shoot at," and the variance did not prejudice Beale's defense. We find this issue is without merit.

### III.    The statement from the officer was not hearsay.

¶39.    In Beale's final issue on appeal, he argues the trial court erred in allowing Officer Hall to repeat the statements that Piccola provided when he arrived at the crime scene. The State insists that the statements were not hearsay because they were offered to explain the officer's steps in the course of his investigation.

¶40.    "The standard of review for the admission of hearsay evidence is abuse of discretion." *Friday v. State*, 217 So. 3d 759, 764 (¶18) (Miss. Ct. App. 2017). Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c).

¶41.    At the scene of the shooting, Piccola talked to Officer Hall, who later relayed what she told him to the jury. When asked what Officer Hall learned from Piccola when he arrived at the crime scene, he testified "[S]he stated that [Beale] had been drinking all night

14

and appeared to be heavily intoxicated at this point and said that if the police were called, that he was going to kill them."

¶42.    "Our supreme court has granted an exception for certain hearsay statements made to the police during the course of their investigation, holding that such statements are permissible." *Anderson v. State*, 1 So. 3d 905, 914 (¶25) (Miss. Ct. App. 2008).  "It is elemental that a police officer may show that he has received a complaint, and what he did about the complaint without going into the details of it." *Id*.  "However, where the out-of-court statement is 'testimonial' in nature, the statement is generally not admissible unless the declarant is unavailable to testify in court, and the defendant has had a prior opportunity to cross-examine him or her." *Id*. at 914-15 (¶25) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)).

¶43.    In this case, Officer Hall's statements were not admitted to prove the truth of the matter asserted; rather, his statements were admitted to explain the next steps in the course of his investigation.  As in *Anderson*, even if Officer Hall's recitation of Piccola's statement to him was considered to be testimonial, "any error by the trial court in admitting the statements would be harmless because [Beale] had the opportunity to cross-examine [Piccola]." *Id*. at 915 (¶27).  Additionally, the record in this case shows that Piccola's statements regarding Beale's threats toward police officers were also introduced at trial through the testimony of the 911 dispatcher.  A recording of the 911 call was also played for the jury.  It was therefore within the trial court's discretion to allow the officer to testify in

this circumstance.[4]

## CONCLUSION

¶44.    We find that Beale's indictment correctly stated the necessary elements of attempted murder.  We further find that jury instructions 8 and 9 did not constitute a constructive amendment to the indictment.  Finally, we find that it was within the trial court's discretion to allow the officer to testify at trial as to what he was told in the course of his investigation.  For these reasons, we affirm.

¶45.  **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, LAWRENCE AND SMITH, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McDONALD, J.**

---

[4] Officer Hall's testimony also could have been admitted pursuant to the excited-utterance exception to the general prohibition on hearsay.  *See Smith v. State*, 25 So. 3d 264, 273-74 (¶28) (Miss. 2009) (finding that although the trial court erred in admitting a statement into evidence on one ground, the evidence was otherwise admissible under a different ground).  "Mississippi Rule of Evidence 803(2) states that an excited utterance is 'a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" *Burke v. State*, 256 So. 3d 637, 640-41 (¶11) (Miss. Ct. App. 2018) (citation omitted).

Here, Piccola provided her statement to Officer Hall immediately when he arrived at the scene of the ongoing and potentially deadly situation.  During this time, Beale was still inside her apartment.  This Court has held that "[w]here the excited utterance is prompted by a simple question, even from an officer, such as 'What happened?' or 'What's wrong?' we still have found the statement to fall under the exception." *Id*.  What happened in this case then falls under the situation presented in *Burke*.  Furthermore, since Piccola testified at trial and Beale had the opportunity to cross-examine her, there was no violation of the Confrontation Clause.

16

**WESTBROOKS, J., DISSENTING:**

¶46.    I respectfully disagree with Part I of the majority's opinion. In my opinion, the State committed reversible error when it did not provide Beale with proper notice of the charges against him by failing to describe the overt act he committed in each count of his indictment.

¶47.    The State indicted Beale on October 10, 2018, for three counts of attempted murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2017). On May 23, 2019, the State amended Beale's indictment by removing and replacing "[s]ection 97-3-19(1)(a)" with "[s]ection 97-1-7" for all counts. The jury found Beale guilty of counts I and II but not guilty of count III.

¶48.    Beale has a basic constitutional right to demand notice of the charges against him. *Hawkins v. State*, 255 So. 3d 1264, 1268 (¶8) (Miss. 2018) (citing U.S. Const. amend. VI; Miss. Const. art. III, §§ 26-27). Our Mississippi Constitution states that "in all criminal prosecutions the accused shall have a right to . . . demand the nature and cause of the accusation . . . ." Miss. Const. art. III, § 26; *accord Tran v. State*, 962 So. 2d 1237, 1241 (¶16) (Miss. 2007); *see Byrom v. State*, 927 So. 2d 709, 725 (¶52) (Miss. 2006); *Williams v. State*, 445 So. 2d 798, 804 (Miss. 1984). Thus, "[a]n indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is void." *Hawkins*, 255 So. 3d at 1268 (¶8) (quoting *Thomas v. State*, 126 So. 3d 877, 879 (¶7) (Miss. 2013)). My position on this issue is congruent with Justice Coleman's dissent in the Supreme Court's recent decision in *Brady v. State*, No. 2021-KA-00163-SCT, 2022 WL 1182320, at *11 (¶56) (Miss. Apr. 21, 2022) (unpublished) (Coleman, J., dissenting) (explaining that in order for

17

an indictment charging attempt to be sufficient, it must allege an overt act, and the overt act described must be "manifestly adapted to effectuate the offense" (quoting *Harris v. State*, 329 So. 2d 525, 526 (Miss. 1976))).

¶49.  Beale's indictment, which cited section 97-1-7, was defective and did not put Beale on notice because it did not describe what act Beale committed toward attempted murder. *See* Miss. Code Ann. § 97-1-7 (Rev. 2014).  Beale's amended indictment stated the following, in part:

**COUNT 1**

That **JERRY LEE BEALE,** Late of the County and State aforesaid, on or about the 7TH day of **June,** in the year of our Lord, **2018,** in the County and State aforesaid, and within the jurisdiction of this Court, did wilfully, unlawfully and feloniously, attempt to kill Officer Colin Hall, a human being; **JERRY LEE BEALE** acted with the deliberate design to effect the death of Officer Colin Hall, but failed to successfully complete the act, in direct violation of Section 97-1-7, Mississippi Code 1972 Annotated, as amended, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

**COUNT 2**

That **JERRY LEE BEALE,** Late of the County and State aforesaid, on or about the 7TH day of **June,** in the year of our Lord, **2018,** in the County and State aforesaid, and within the jurisdiction of this Court, did wilfully, unlawfully and feloniously, attempt to kill Officer Mary Fite, a human being; **JERRY LEE BEALE** acted with the deliberate design to effect the death of Officer Mary Fite, but failed to successfully complete the act, in direct violation of Section 97-1-7, Mississippi Code 1972 Annotated, as amended, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

¶50.  At the outset, I address our recent precedent regarding attempted murder indictments in *Pickett v. State*, 252 So. 3d 40 (Miss. Ct. App. 2018), and *Morton v. State*, 246 So. 3d 895 (Miss. Ct. App. 2017).  In *Pickett*, the jury convicted Jaccarus and Willie of attempted first-

18

degree murder. *Pickett*, 252 So. 3d at 44 (¶4). Jaccarus and Willie appealed their convictions and argued that their amended indictment did not charge the essential elements of attempted murder because it did not specifically state that they "failed" to commit the act. *Id*. at 46 (¶15). Jaccarus' and Willie's indictment stated that the defendants

> willfully, unlawfully, and feloniously, with deliberate design to the effect the death of . . . Clark, did attempt to kill and murder . . . Clark, a human being, without authority of law and not in necessary self-defense, by shooting at him.

*Id*. at (¶13). This Court held that since the indictment stated that the defendants "attempt[ed] to kill and murder Clark," the indictment did not have to also say that the defendants failed to effect homicide. *Id*. at 47 (¶15). Likewise in *Morton*, the jury convicted Morton of attempted murder. *Morton*, 246 So. 3d at 902 (¶11). Morton argued on appeal that his indictment failed to charge an essential element of the crime. *Id*. at (¶12). As in *Pickett*, Morton argued that his indictment lacked the word "failed" and did not state that he did not complete the act. *Id*. Also like *Pickett*, Morton's indictment stated that Morton

> willfully, unlawfully, and feloniously, and with deliberate design to cause his/her death, . . . attempt to kill Charlie Arnold, a human being, under such circumstances that, if accomplished, would constitute an offense of murder under section 97-3-19 by repeatedly striking Charlie Arnold in the head with a metal walking stick, without authority of law, in violation of section 91-1-7.

*Id*. at (¶14). This Court again held that the use of the word "attempt" put Morton on notice that the crime was not completed. *Id*. at 903 (¶15). Therefore, *Pickett* and *Morton* arguably stand for the proposition that an attempt indictment does not necessarily have to state the word "failed" in order to meet its constitutional requirements to put a defendant on notice.

¶51. However, *Pickett* and *Morton* do not address whether an attempted murder indictment

19

must describe the overt act. In *Pickett* we followed *Spearman v. State*, 58 So. 3d 30, 36 (¶20) (Miss. Ct. App. 2011), and found that an attempted murder indictment must state two things: (1) the defendant's intent to commit the murder, and (2) the defendant's overt act committed toward the attempted murder. *Pickett*, 252 So. 3d at 46 (¶14). We also acknowledged that the indictment in *Pickett* charged "the act of 'shooting at him,'" *Pickett*, 252 So. 2d at 46 (¶13), and Morton's indictment charged that he "repeatedly str[uck] Charlie Arnold in the head with a metal walking stick . . . ." *Morton*, 246 So. 3d at 902 (¶12). The Court did not address whether an overt act was required in these cases, so no due consideration should be given to their holdings in that respect. Nonetheless, the decision of the State to describe the overt acts in *Pickett* and *Morton* exemplifies how the State has treated attempted murder indictments and why the State should continue to do so. *See id*.

¶52. Beale's indictment charging Beale under section 97-1-7 did not describe the overt act he allegedly committed. Section 97-1-7 provides:

> (1) Every person who shall design and endeavor to commit an offense, and shall do *any overt act* toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no other specific provision is made by law for the punishment of the attempt, be punished by imprisonment and fine for a period and for an amount not greater than is prescribed for the actual commission of the offense so attempted.

> (2) Every person who shall design and endeavor to *commit an act* which, if accomplished, would constitute an offense of murder under Section 97-3-19, but shall fail therein, or shall be prevented from committing the same, shall be guilty of attempted murder and, upon conviction, shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict after a separate sentencing proceeding. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than twenty (20) years in the custody of the Department of

20

Corrections.

(Emphasis added).

¶53.    Our appellate courts have held that an indictment that cites to the general attempt statute, section 97-1-7, must describe the overt act. *White v. State*, 851 So. 2d 400, 403 (¶5) (Miss. Ct. App. 2003) (citing *Maxie v. State*, 330 So. 2d at 277, 278 (Miss. 1976)); *Scott v. State*, 305 So. 3d 145, 148 (¶15) (Miss. 2020) ("[A]n indictment under Mississippi Code section 97-1-7 'must set forth two elements: (1) the intent to commit the offense, and (2) an overt act toward its commission.'" (quoting *Maxie*, 330 So. 2d at 277-78)); *Ross v. State*, 601 So. 2d 872, 874 (Miss. 1992). The *Scott* court also recognized that "[s]ection 97-1-7 in the Code of 1972 was 'substantially unchanged since Hutchinson's Code of 1848'" and that "[s]ection 97-1-7(1) remains . . . identical to [s]ection 97-1-7 in the 1972 Code." *Scott*, 305 So. 3d at 148 (¶15).  So the same constitutional requirements apply here, and the second attempt element ("an overt act toward its commission") remains. *See Pickett*, 252 So. 3d at 46 (¶14); *Spearman*, 58 So. 3d at 36 (¶20).

¶54.    In another case, the State indicted Richard Lamar Green for "the attempted murder and kidnapping of his wife, Cathleen Green." *Green v. State*, 269 So. 3d 75, 77-78 (¶¶1, 8) (Miss. 2018).  As the majority notes, Green challenged the sufficiency of the State's evidence but specifically argued "that the State had failed to prove all of the necessary elements for the charge of attempted murder." *Id*. at 78 (¶8).  When discussing the necessary elements of attempted murder and referencing section 97-1-7(2), the Supreme Court stated that one of the necessary elements of attempt is "a direct overt act done toward its commission." *Id*. at

82 (¶19).  The  court further reasoned that "[o]ne may intend to commit the crime of murder and may procure a firearm for that purpose, but until his acts go beyond mere preparation to the extent of doing some *overt act* in the actual carrying into effect his intent, he is not guilty of an 'attempted murder.'" *Id.* at 83 (¶21) (emphasis added) (quoting *Jackson v. State*, 254 So. 2d 876, 878 (Miss. 1971)).  Thus, I apply the reasoning in *Green* here only to reaffirm the proposition that an overt act is a necessary element of the crime of attempted murder.  *Id*. at 82 (¶19).  It logically follows then, in accordance with our Constitution and precedent, that the overt act element must be set out in the indictment.  *See Thomas v. State*, 126 So. 3d 877, 879 (¶7) (Miss. 2013) ("An indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is void.").

¶55.    Despite our legal precedent, the majority attempts to distinguish the phrase "an overt act" of subsection 97-1-7(1) from the phrase "commit an act" of subsection 2 by engaging in statutory interpretation.  Through statutory interpretation, the majority then concludes that indictments charging under subsection 2 need not describe the overt act.

¶56.    I respectfully disagree.  While subsection 2 may lack the word "overt," the law is clear—a description of the act is required.  As such, finding that an overt act must be described in an attempted murder indictment does not require us to "rewrite the statute," as Judge McCarty suggests, but only to interpret the language as it clearly reads.  The statute is plain and unambiguous, and because it is so, we do not engage in statutory interpretation. *Tipton v. State*, 150 So. 3d 82, 84 (¶7) (Miss. 2014).

¶57.    As subsection 2 plainly reads, the accused must have "design[ed] and endeavor[ed]

22

to commit an act," or in other words an act to effect his intent. Both phrases to "commit an act" and "an overt act" quite frankly lack the requisite specificity to put the accused on notice. That is why our Supreme Court has found in previous instances, that more description is required in the indictment. *See Tran*, 962 So. 2d at 1243 (¶23) (finding that within the money laundering statutory scheme, the element "some unlawful activity" needed description); *State v. Berryhill*, 703 So. 2d 250, 256 (Miss. 1997). Subsection 2 requires that the defendant "commit an act," but the indictment does not tell us what that act is. In theory, were we to adopt the majority's conclusion, subsection 2 would always leave the door open for the State to change its proof later on down the road.

¶58. Instead, we should align our statute with our criminal procedural rules and case precedent. *See* MRCrP 14.1(a)(1) ("[Only] [when] the offense can be *substantially described* . . ." are "[f]ormal and technical words . . . not necessary. . . ." (emphasis added)); *Cowan v. State*, 399 So. 2d 1345, 1348 (Miss. 1981) ("An indictment which charges an offense in the words of a statute which generally defines an offense, is insufficient where it alleges the offense . . . but does not state the *specific acts* on which the charge is based." (emphasis added)). Under our Mississippi Constitution, criminal procedure rules, and case precedent, I find that for the crime of attempted murder, the indictment must describe the overt act.

¶59. Given the State's failure to provide Beale with the essential facts necessary to place him on notice of the charge against him, the State committed reversible error. *Vale v. State*, 243 So. 3d 205, 209 (¶15) (Miss. Ct. App. 2017); *see Hawkins*, 255 So. 3d at 1268 (¶8); *Thomas v. State*, 126 So. 3d 877, 879 (¶7) (Miss. 2013). I would reverse the convictions and

23

render judgment of acquittals.  Therefore, I respectfully dissent.

**McDONALD, J., JOINS THIS OPINION IN PART.**